### E. J. POWERS v. T. DAVENPORT.

*Arrest and Bail—Agent—Jurisdiction—Fraud.*

1 A debtor *endorsed to his creditor certain notes as collateral security,* but retained possession of them under an agreement that he was to collect when due, and pay the proceeds to the creditor; *Held,* that this made him the agent of the creditor, and snbjected him to arrest in a civil action for fraudulently failing to account for the sums he collected under the agreement.

When one who has been arrested moves to vacate the order of arrest upon counter affidavits, purporting to meet the facts alleged against him, he should do so fully and clearly, otherwise the order of arrest will be continued.

·3. It is no ground for vacating an order of arrest that the defendant had been indicted, tried and acquitted by the Courts of another State upon the same charge.

4. A non-resident of this State may be arrested and held to bail for fraud under *The Code,* § 291 (2).

·5. A person may be arrested and held to bail for a fraud committed after the contracting of the debt—*e. g.*—by concealing property, or other devices for defeating the creditor.

This is an APPEAL from the judgment of *Shepherd, J.,* refusing to allow a motion of the defendant to vacate an

order of arrest made in an action pending in NEW HANOVER Superior Court, heard at Chambers on January 27, 1888.

The order of arrest was made upon the following affidavit:

" Henry W. Malloy being duly sworn, deposes and says:

" 1. That he is the agent of the plaintiff.

" 2. That on or about the 5th day of October, 1885, the plaintiff turned over to the defendant, as his agent, for the purpose of collection, certain notes and accounts against parties in the State of South Carolina, amounting in the aggregate to the sum of two thousand six hundred and thirty-nine and $\frac{5}{100}$ dollars, with the understanding and agreement between the said plaintiff and defendant that the defendant would collect said notes and accounts for the plaintiff and turn over the proceeds thereof to the plaintiff as they were collected.

" 3. That in pursuance of said agreement the defendant proceeded to collect said notes and accounts, and, as this deponent is informed and believes by conversations with the parties indebted on said notes and accounts, and from receipts in the handwriting of said defendant and in the possession of said parties, and from an examination of the defendant's books, the defendant collected the sum of eleven hundred and eighty-eight and $\frac{70}{100}$ dollars from the several debtors and in the several amounts enumerated in the schedule hereto attached and made part of this affidavit. And this affiant believes that he has collected other amounts from the debtors of the plaintiff, but exactly what amounts and from whom he is unable to state.

" 4. That the plaintiff has demanded of the defendant that he account to him for the money so collected, and pay the same over to him, but hitherto the defendant has wholly neglected and refused to do so, and as this affiant is informed and believes, has fraudulently and unlawfully converted the same to his own use, with the intent to defraud and cheat the plaintiff.

" 5. That the plaintiff has commenced this action, and has issued a summons herein."

The schedule of debts accompanies the affidavit. The order of arrest was made returnable " to the Clerk of the Superior Court of New Hanover County, at his office in the city of Wilmington, County and State above written, on Wednesday, the 18th day of January, A. D. 1888."

Defendant moved to vacate the order of arrest, and in support of said motion, filed an affidavit admitting paragraph 1 of plaintiff's affidavit, and so far as is material for our consideration, saying in answer to the affidavit in substance that, in the spring of 1885, he purchased from the plaintiff seventy tons of Gibbs' Guano, for which he executed three notes, and that in October of the same year, at Gaffney City, S. C., he *endorsed* various notes and accounts to the plaintiff as a collateral security for the payment of these notes; that by agreement the said notes and accounts were left in the defendant's hands with the understanding that as defendant collected money thereon he would apply it to the payment of these notes; that when said collaterals were *endorsed* to plaintiff he was informed that they were executed to defendant for various brands of guano—the Gibbs among them; that the defendant was selling other brands, but that he had enough notes and accounts to pay his guano indebtedness, provided he could make collections, and that "agreeable to said understanding," he did collect about "$300, in cash, which said $300 represented the share and percentage which Gibbs' Guano held to the $668 collected on said notes, and that the $300 were paid to the plaintiff, and for freights." That about $600 of said notes were collected by one S. S. Ross and applied to the debts of T. Davenport & Co; that said Ross was not a partner of defendant in the purchase and sale of Gibbs' guano, but was a partner in the purchase and sale of other guano; that in November, 1885, plaintiff (by his agent Malloy) caused de-

fendant to be arrested and indicted in South Carolina upon a charge of " breach of trust with fraudulent intent" in collecting and fraudulently converting money collected on said notes and accounts; that the defendant was acquitted, and a transcript of the indictment and verdict of "not guilty" accompanies the affidavit.

The third paragraph of plaintiffs affidavit is denied, and so is the fourth paragraph, except so much of it as alleges a demand.

The affidavit further states that in a civil action instituted * * * * in South Carolina by the Atlantic Phosphate Company against him an order was made, a copy of which accompanies the affidavit, in which, among other things, it is ordered that defendant turn over to a receiver " all notes, accounts and choses in action in his possession, and all property of every description * * * except the sum of money found 'by the referee to be in his possession, &c." The Court finds, so the order states in substance, that the defendant has made an explanation of the disposition of the funds referred to.

The defendant further says in substance, that a large part of the notes and accounts were not collected by reason of Malloy's (plaintiff's agent) interference with his business in South Carolina, by which he was greatly injured, and that other sums were collected by one Moore, his agent, and Ross, his partner, and went into the general fund of T. Davenport & Co.; that Ross collected a large portion of the money received from the notes and accounts which defendant had endorsed to plaintiff. He denies all intention to defraud, or that he appropriated any of the plaintiff's money to his own use.

Malloy (agent for plaintiff) filed a counter affidavit, denying any such agreement as that contained in defendant's affidavit, or that anything was said about the sales of other

guanos, or that defendant had informed plaintiff that the notes and accounts were for the sales of various brands of guano; on the contrary the defendant "expressly stated that they were from the sale of plaintiff's guanos," and by the agreement between plaintiff and defendant, all notes and accounts for the sale of guano were to be held for the plaintiff till the three notes were paid    The written agreement, a copy of which is filed with the affidavit, is to the effect stated. The affidavit further states that of all the various amounts collected by the defendant only $130 were paid to the plaintiff; that he knew that the defendant continued to make collections, and that it was after full and ample knowledge that the defendant had collected money which he refused to pay over "that he had him arrested on the charge on which he was tried and acquitted as stated in the defendant's affidavit;" that the money collected "was appropriated by defendant to his own benefit, or by others with his full knowledge and consent."

The defendant moved to vacate the order of arrest on the following grounds:

"I. That the order of arrest is defective, in that it fails to state when it is returnable.

II. That the affidavit upon which said order of arrest was granted is insufficient.

III. That the allegations of the affidavit upon which said order of arrest was granted are wholly denied by the affidavit of the defendant filed in the cause.

IV. That the defendant has been indicted and tried by a Court of competent jurisdiction of the fraudulent breach of trust alleged in the affidavit upon an indictment instituted by said H. W. Malloy, agent of the plaintiff, and was acquitted.

5. That the defendant is a non-resident of the State, and is not liable to arrest for the causes set out in the affidavit of the plaintiff's agent, H. W. Malloy, and under section 291 (2) of *The Code.*

6. That the collateral security endorsed by defendant to plaintiff was not the property of plaintiff, but of the defendant, and the defendant did not stand in a fiduciary capacity or relation to plaintiff, and even if he had appropriated all of the money to his own use, he would not be guilty of fraud as contemplated under section 291 of *The Code.*

7. That the alleged fraudulent conversion or embezzlement was committed, if anywhere, in the State of South Carolina."

The Court rendered the following judgment:

" This motion coming on to be heard before me on affidavits and the papers herein as amended, and it appearing to the Court that the allegations set forth in the affidavit of plaintiff as grounds of arrest have not, upon the proofs, been sufficiently rebutted, the Court finds, for the purpose of this motion only, that the said allegations are true. It is therefore adjudged that the motion to vacate the order of arrest is refused."

From this judgment the defendant appealed.

*Mr. Solomon Weil* (by brief), for the plaintiff.
*Mr. John Devereux, Jr.,* for the defendant.

DAVIS, J., (after stating the case.) 1. Section 295 of *The Code,* among other things, provides that the order " shall require the Sheriff  *  *  *  *  *  to arrest him (the defendant) and hold him to bail in a specified sum, and return the order at a place and time therein mentioned to the Clerk of the Court in which the action is brought, &c." In exact compliance with this provision the order is made returnable " to the Clerk of the Superior Court of New Hanover County, at his office in the city of Wilmington, county and State above written, on Wednesday, the 18th day of January, A. D. 1888."

So the order of arrest is not defective in that respect.

2. Section 291, subsection 2, of *The Code,* authorizes an arrest " in an action  * * *  for money received, for property embezzled or fraudulently misapplied by  * * *  any factor, agent, broker, or other person in a fiduciary capacity."

The affidavit alleges that the defendant was the agent of the plaintiff, and that as such he collected money which he " fraudulently and unlawfully converted" to his own use with " intent to defraud and cheat the plaintiff", and we think the affidavit was sufficient to warrant the order of arrest.

3. The affidavit of the defendant contains a statement of facts in avoidance of the plaintiff's allegations rather than a denial, and the statement is not very clear or satisfactory. He admits that the notes and accounts were endorsed by him to the plaintiff, and were left with him for collection.   Just what he means when he says that he collected " $300 in cash, which said $300 represented the share and percentage which the Gibbs Guano held to the $668.00 collected on said notes,', is not very clear, as the $668.00 is nowhere else mentioned ; but we assume that it had reference to the alleged fact, that the plaintiff was informed at the time the notes and accounts were endorsed to him, that they, were executed for various brands of guano.

The defendant also says that some of the notes and accounts were collected by one Moore, his agent, and by one Ross, his partner, and went into the general fund of T. Davenport & Co.   He does not say that this was without his knowledge or approval.   His affidavit is met by the counter affidavit of Malloy, supported in a material respect by the written agreement signed by the defendant, and it is found, and as the evidence warranted, by the Court below, that for the purposes of this motion the allegations of the plaintiff are true, and the 3rd ground upon which the defendant bases his motion to vacate the order of arrest cannot be maintained.

4. This is a civil action instituted in the Superior Court of New Hanover County to recover money which the plaintiff

alleges the defendant, as his agent, had collected and neg-
lected to pay over to him, and which he refused to pay upon
demand, and the plaintiff's rights in this action cannot be
affected by the result of any collateral proceeding or prose-
cution in South Carolina, and the 4th ground of defendant's
motion cannot avail him.

5. Chapter 69, section 1, of the Acts of 1869–'70, C. C. P.,
§ 149, Bat. Rev., 176, authorized arrest and bail " in actions
arising on contract where the defendant is a non-resident of
the State." This provision has not been brought forward in
*The Code,* doubtless because it was thought to be in contro-
vention of Art. 1, sec. 16, of the Constitution, which declares
that " there shall be no imprisonment for debt in this State
except in cases of fraud." But there is no constitutional
protection against " arrest for fraud," whether the person be
a resident or non-resident, and it would be a singular dis-
crimination in favor of non-residents if, when within the
jurisdiction of our Courts, they should be allowed immuni-
ties not accorded to our own citizens.

It has been held that under subsection 4, section 291, of
*The Code,* a defendant cannot be arrested unless he has been
guilty of fraud in contracting the debt. *McNeely* v. *Haynes,*
76 N. C., 122. The cases cited by counsel for defendant
(*Brown* v. *Ashborough,* 40 How. Prac. Rep., 226, and others,)
have reference to arrest for fraud in *contracting debt,* and not
to the class of cases embraced in subsection 2.

In *Melvin* v. *Melvin,* 72 N. C., 384, it is said, " The words
except in cases of fraud are very broad," and they compre-
hend " not only fraud in attempting to delay and defeat the
collection of a debt by concealing property or other fraudu-
lent devices, but embraces also fraud in making the contract,
false representations, for instance, and fraud in increasing
the liabilities, as when an administrator, by applying the
funds of the estate to his own use, paying his own debts, and
the like."

We think the case before us comes within the provision of subsection 2, section 291, of *The Code*, and that the fact that the defendant is a non-resident of the State gives him no immunity from arrest when within the jurisdiction of the Courts of this State.

6. We are unable to see any force in the 6th ground upon which the defendant bases his motion. His own evidence shows that the notes were *endorsed* to the plaintiff, and that he held them to collect for the plaintiff.

7. What is said of the 5th ground for vacating the order, applies to the 7th also. If a person in South Carolina, whether a citizen of that State or of this State, commits a battery in that State upon a citizen of this State, or does any other act for which an action will lie, and afterwards comes within the jurisdiction of this State, he would be liable to an action here, and the *lex fori* would govern it. The parties are within the jurisdiction of the Courts of this State, the relief is sought here, and the action in which the remedy or relief is sought is governed by the laws of this State.

There is no error.                          Affirmed.