## NATIONAL BANK v. JENNINGS.

1. COMPLAINT—TRUST MONEYS—COLLATERALS.—A complaint states a cause of action when it alleges that plaintiff lent money to the defendants, a partnership, on promissory notes secured by choses in action, assigned to plaintiff, and deposited as collateral security for the payment of said notes; that by agreement, defendants were to collect these choses and turn over the proceeds to plaintiff, under the special confidence that defendants would properly turn over as agreed; that defendants collected large sums on these choses in their fiduciary capacity, but fraudulently failed to turn over such collections, and that their notes to plaintiff were wholly unpaid.

2. ARREST AND BAIL—FACTS—APPEAL.—An unverified complaint will not justify an order for arrest and bail, but facts stated in affidavits must be assumed by this court to be true where they have been so found by the clerk in granting the order, and by the Circuit Judge in refusing to vacate it.

3. IBID.—FIDUCIARY RELATION.—The facts stated in this complaint having been supported by affidavits, and there being none contra, a fiduciary relation was established on the part of the defendants, and the money collected on the pledged securities was shown to have been fraudulently misapplied by a person in a fiduciary capacity, and the partnership guilty of a fraud in contracting the debt—the liability for these collections—for which the action was brought. Therefore, an order requiring arrest and bail of the defendants' managing member, who had made the misappropriation, was proper.

4. ARREST AND BAIL—GUILTY PARTNER.—The partner who was mainly, if not entirely, responsible for the misappropriation, may be alone arrested for the moneys fraudulently misapplied to the uses of the firm.

5. AFFIDAVIT—CAUSE OF ACTION.—An affidavit is not defective for not stating that a sufficient cause of action exists, when it alleges the facts which show a cause of action.

Before HUDSON, J., Greenville, April, 1892.

This was an action by the National Bank of Greenville against William A. Jennings and others.

*Messrs. Perry & Heyward,* for appellant.

*Messrs. Haynsworth & Parker,* contra.

March 4, 1893.   The opinion of the court was delivered by

MR. CHIEF JUSTICE McIVER.   This appeal presents two general questions: 1st. Whether the Circuit Judge erred in refusing the motion to dismiss the complaint, upon the ground that sufficient facts are not therein stated to constitute a cause of action?   2d.   Whether there was error in refusing the motion to vacate the order of arrest, upon the ground that the affidavits used for the purpose of obtaining such order do not state sufficient grounds for the arrest?

To determine the first question, it is necessary to confine our attention to the allegations contained in the complaint, which, for the purpose of the motion, must be assumed to be true.   These allegations are substantially as follows: That the plaintiff made certain loans of money to the firm of which the defendants were members, evidenced by promissory notes maturing in the fall of 1891, and secured by certain choses in action assigned to, and deposited with, the plaintiff, as collateral security for the payment of said loans; that the plaintiff made no effort to collect said choses in action so assigned and deposited as collateral security for the said loans of money evidenced by the notes aforesaid, but, under the arrangement between them, looked to the defendants to collect said choses in action and to turn over to the plaintiff at once the proceeds of such collections, and the plaintiff trusted to the defendants so to do; that, in pursuance of the said understanding, the defendants did collect considerable sums of money upon said choses in action (the amount being stated); that no part of the proceeds of said collections has been paid to the plaintiff, and that the defendants, after demand therefor, have neglected and refused, and still refuse, to pay to the plaintiff any portion of said collections, and that no part of the said notes secured by said collaterals has been paid; that the defendants received said money in a fiduciary capacity, the plaintiff having permitted them to make said collections in the

special confidence that the proceeds thereof would be at once turned over to the plaintiff, but that defendants, with intent to cheat and defraud the plaintiff, appropriated to their own use the amonnts so collected as aforesaid. Wherefore, judgment is demanded, that the defendants account for all sums collected by them on the choses in action so assigned and transferred to the plaintiff as collateral security for the payment of the said notes given for the loans of money by the plaintiff to the defendants.

It seems to us that these facts show, beyond dispute, that the plaintiff has a cause of action against the defendants. When the defendants assigned and delivered to the plaintiff the choses in action, as collateral security for the loans of money represented by the notes, the plaintiff acquired a qualified property in said choses in action, or rather in the money due thereon, and when that money was collected, such money belonged to the plaintiff, and became at once applicable to the payment of the said notes, so far as might be necessary for that purpose. When, therefore, the defendants collected any money on the said choses in action, they were under a legal, as well as a moral, obligation to apply such money to the payment of the notes, and when, after demand, they failed and refused so to apply it, they were guilty of a wrong in violation of plaintiff's rights, and this afforded a good cause of action against defendants by the plaintiff. It is clear, therefore, that there was no error in refusing the motion to dismiss the complaint upon the ground stated.

Proceeding, then, to the second question, it appears that very soon after the action was commenced, the plaintiff applied for and obtained from the clerk of the court an order for the arrest of the appellant, W. A. Jennings. This order was obtained upon the several affidavits set out in the "Case," and the inquiry is whether these affidavits state such facts as would authorize the arrest. The Code of Procedure, in section 199, after declaring that "no person shall be arrested in a civil action, except as prescribed by this Code of Procedure," proceeds, in section 200, to declare in what cases an order for the arrest of a defendant in a civil action may be obtained. So

much of that section as, in our judgment, relates to the present inquiry, reads as follows: "1. In an action for money received, or property embezzled or fraudulently misapplied, * * * by any factor, agent, broker, or other person, in a fiduciary capacity. * * * 3. When the defendant has been guilty of a fraud in contracting the debt or incurring the obligation for which the action is brought." So that the inquiry here is, whether the facts stated in the affidavits relied on are sufficient to show that the appellant in this case has fraudulently misapplied money received by him in a fiduciary capacity, or has been guilty of fraud in incurring the obligation for which the action is brought? For this purpose, we must look alone to the affidavits, as the complaint does not appear to have been verified, and cannot, therefore, be considered as an affidavit, and can only be looked to for the purpose of ascertaining whether an action has been commenced, and what is the nature and object of such action. It is not our province to inquire whether the facts stated in the affidavits are true, for that, we must assume, has been done both by the clerk and the Circuit Judge; but we are limited to the inquiry, whether, assuming the facts stated in the affidavits to be true, they are sufficient to warrant the order of arrest?

In the affidavit first set out in the "Case," the affiant not only states that he has examined the books of defendants, which show that a considerable amount of money (stating the amount) has been collected by the defendants on the collateral securities held by the plaintiff, but he adds that the appellant, W. A. Jennings, "admitted that he had made large collections upon said securities, * * * which he had appropriated to the use of said firm in its business; that he attempted to explain said appropriation of said funds, by saying that Mr. Hamlin Beattie, the president of the plaintiff, knew that he was making said collections, and had allowed him to use the same in paying other debts of said firm, expecting them to repay the same when able." But this alleged authorization is emphatically denied in the affidavit of said Hamlin Beattie, who says: "that the loans mentioned in the third and fifth paragraphs of the complaint were made upon the

faith of the securities mentioned in said paragraphs, and would not have been made without them; that the deponent expected the defendants to look after the collections upon said securities, but expected them to deliver to the plaintiff the proceeds of each collection as soon as it should be made; that he never did consent, and would not have consented, for the defendants to appropriate to their own use any portions of the collections upon said securities, or to have mixed the same with their own funds; that it was not until after the middle of December, 1891, that deponent learned that the defendants had collected any money upon the securities for said loans; that, upon several previous occasions, deponent had approached William A. Jennings in reference to the amount due the plaintiff, and had urged payment; and that the said William A. Jennings each time stated that all his collections were very slow, and that nothing had been collected upon the securities pledged for said loans; that the money collected as aforesaid was received by the defendants in a fiduciary capacity, and the plaintiff trusted to them to at once turn over the same, but defendants have fraudulently appropriated the same to their own use."

The affidavits of the cashier and assistant cashier of the plaintiff bank show that the appellant, William A. Jennings, admitted to them that he had collected a considerable sum of money (stating the amount) on the collateral securities pledged to the bank to secure the payment of the said loans of money to the defendants, and had not paid over the same to the bank, but had applied the same to the uses of his firm, and that he knew that the money so collected by him belonged to the bank, and should have been turned over to it by him, but that he expected to pay the notes of the firm in the bank "with other money which he hoped to have—thought he could replace the money so used." Finally, the affidavit of the bookkeeper of defendants' firm shows that the appellant, William A. Jennings, was the senior member and manager of the business, made most of the collections himself, and was fully cognizant of those not made by him personally, and knew perfectly well

from what sources collections were made, and received and disbursed the money collected.

It seems to us that these facts show that this is an action for the recovery of money received by a person in a fiduciary capacity and fraudulently misapplied, and, therefore, the order of arrest was fully justified by the facts stated in the affidavits, and there is no counter-showing by affidavit calling for a reversal or modification of such order. When these choses in action, upon which the collections were made, were assigned to the bank as collateral security for the payment of the loans of money made by the bank to the defendants, they knew— the appellant admits that he knew—that all money collected on such collaterals belonged to the bank, and should be turned over to it as soon as collected. When, therefore, the appellant undertook to collect, and did collect, money on these collaterals, he voluntarily assumed a trust which he was, both legally and morally, bound to perform. He thereby assumed a fiduciary relation to the plaintiff, and became bound to fulfil the duties incident to such relation. It may be that, in the absence of an agreement to that effect, he was not bound to assume such a relation, and was not bound to make collections on the collaterals, and hence not bound to apply the same to the payment of the debt which they were given to secure. But when he voluntarily assumed the duty of collecting the collaterals, he, at the same time, necessarily assumed the obligation to apply such collections to the purposes for which the collaterals were transferred to the bank; and when, in violation of that obligation, he misapplied the money entrusted to him in such fiduciary capacity—converted the money of another to his own use—he not only received money in a fiduciary capacity, which he fraudulently misapplied, but also was guilty of fraud in contracting the debt for which he is now sued.

It seems to us that where one receives the money of another, under an understanding, either express or implied, that it is to be applied to a certain purpose, and, in violation of such understanding, not only diverts it to some other purpose, without the consent of the owner, but actually converts it to his own use, such a transaction cannot be properly characterized

as anything but a fraud. It will not do to say that no actual fraud was intended by appellant when he converted the money of the bank to his own use, as he admitted he had done, because he accompanied such admission with the declaration that he expected to pay the bank with other money, which he hoped to have, or that he thought he could replace the money which he had thus converted to his own use. For, as was well said in *Commonwealth* v. *Tenney*, 97 Mass., 50: "A guilty intent is necessarily inferred from the voluntary commission of an act, the inevitable effect of which is to deprive the true owner of his property, and appropriate it to defendant's own use. Perhaps, in the majority of cases, the party who violates his trust in such a manner does not expect or intend that ultimate loss shall fall upon the person whose property he takes and misuses. But no hope or expectation of replacing the funds can be admitted as an excuse before the law."

The views which we have adopted are not without the support of authority. In *Clark* v. *Iselin*, 21 Wall, at page 368, the U. S. Supreme Court quotes with approval the following language, directly applicable to the case under consideration, from *White* v. *Platt*, 5 Denio, 269: "Where promissory notes are pledged by a debtor to secure a debt, the pledgee acquires a special property in them. That property is not lost by their being redelivered to the pledgor to enable him to collect them, the principal debt being still unpaid. Money which he may collect upon them is the specific property of the creditor. It is deemed collected by the debtor in a fiduciary capacity." To same effect, see, also, *Powers* v. *Davenport*, 101 N. C., 286; s. c., 7 S. E. Rep., 747; and *Travers* v. *Deaton*, 107 N. C., 500; s. c., 12 S. E. Rep., 373.

It is contended by appellant, in his fifth point, that "this being an action brought against a partnership, the complaint alleging a misappropriation of funds (if misappropriation it be) to the uses of the partnership, we submit that it cannot warrant the arrest of one of the partners upon the ground that he individually has been guilty of the alleged misappropriation." It might be sufficient to say that we do not find any exception under which this point could properly

be raised. But we will not decline to consider it, as the point may possibly be brought under one of the general exceptions. We do not think the point is well taken. The appellant seems to have had the general and, we might say, the exclusive management of the financial business of the firm—at least, so far as the collections on the collaterals are concerned. It may be, therefore, that none of the other partners were cognizant of his conduct in this respect, and, therefore, not personally involved in the fraud; or it may be that, for this reason, or for some other satisfactory reason, the plaintiff did not wish to resort to so stringent a proceeding against the other copartners. At all events, the plaintiff was not bound to have all, or any, of the defendants arrested, and, as it seems to us, that they had a right to select the partner who was mainly, if not entirely, responsible for the misappropriation of the money.

Finally, it is urged that it does not appear by affidavit "that a sufficient cause of action exists," as required by section 202 of the Code. While it is true that none of the affidavits contain the words just quoted, yet they do contain, what is better—a statement of facts showing that a cause of action does exist.

The judgment of this court is, that the orders appealed from be affirmed.