CARL V. CLINE AND J. F. CLICK, ON BEHALF OF THEMSELVES AND ANY OTHER TAXPAYERS OR CITIZENS OF THE CITY OF HICKORY WHO DESIRE TO MAKE THEMSELVES PARTIES PLAINTIFF, v. CITY OF HICKORY, M. H. YOUNT, MAYOR; W. W. BURNS, NORMAN HUTTON, W. M. REESE, GEORGE BAILEY, EULIN SHOOK, AND CHARLES E. HEFNER, COMPRISING THE CITY COUNCIL; AND R. L. HEFNER, CITY MANAGER.

(Filed 10 October, 1934.)

**Municipal Corporations B d—City held authorized to lease auditorium built by it in its general municipal building.**

The charter of defendant city authorized it to acquire and hold real and personal property and to invest, sell or dispose of same, and provided that all questions of administration not provided for by the charter should be governed by the general laws of the State: *Held,* the city had authority to lease an auditorium in its municipal building which it had equipped at the time the building was erected with a ticket booth and moving-picture projecting equipment, C. S., 2688, 2787 (2), it appearing that the lease did not involve property held in trust for the use of the city, or property devoted to governmental purposes, although administrative offices of the city were located elsewhere in the building.

CIVIL ACTION, before *Warlick; J.,* at Chambers at Newton, N. C., 19 June, 1934.  From CATAWBA.

The plaintiffs instituted this action against the city of Hickory, the members of the city council and the mayor for the purpose of restraining a lease of the auditorium belonging to the city.

The trial judge found the following facts:

1. That the plaintiffs are citizens and taxpayers of the city of Hickory.

2. That the city of Hickory is a municipal corporation, duly chartered under the laws of the State of North Carolina.

3. In the year 1920 the city of Hickory voted a bond issue of $125,000 for the purpose of erecting a municipal building on a lot to which it held title in fee simple, and that on said lot was erected the present municipal building, in which is the office of the city manager, the municipal courtroom, the jail, fire department, and the office of the city council; that the other rooms or offices not now used for city or governmental purposes are rented or let, one to the welfare department and one to the Federal Employment Agency; that the central portion of said building is a large and commodious auditorium, which was built at the time of the erection of the said building; that at the time the building and auditorium were erected, the auditorium was equipped with a stage, a picture machine booth, a ticket stand at which to sell tickets for shows that might be held therein, and a moving-picture machine was installed, and from time to time the said auditorium has been rented by the day and night, and for successive days and nights when asked for, and the rental paid; that the rental acquired in this way has never equaled the upkeep and interest on the investment. That the building is rented on the average of about four nights a month.

4. That the mayor and board of aldermen were approached on the proposition to lease said auditorium for a period of five years for moving-picture shows, and . . . on 10 June, 1934, when the matter again came up for hearing, three bids were received, and the bid of the Criterion Amusement Company, Inc., of Charlotte, N. C., being the highest and most liberal bid, and the price bid being, in the opinion of the mayor and board of aldermen, a fair price, the same was accepted, provided a lease embodying the terms and conditions agreed upon was drawn and signed in such form as to be acceptable to the governing board of the city.

5. That the purpose of renting the auditorium, at this time, is to raise additional revenue with which to help pay its bonded indebtedness and other obligations, and to make the auditorium carry its part of the cost of its investment and upkeep.

6. That the proposed rent for the first year is $200.00 per month; for the next two years $275.00 per month, and for the next two years $325.00 per month, in addition to certain expensive improvements to be made to the building to approximate $8,500.00.

7. The revenue now derived from said auditorium is approximately $360.00 per year.

8. That in any lease that is made of the auditorium by the city of Hickory, by its board of aldermen, it will reserve the use of the building

for four days a month, so as to rent it to any other party desiring it for other entertainment.

9. The court further finds that the charter of the city of Hickory does not provide for the leasing of the said auditorium, nor is there any special act of the General Assembly providing for same.

10. That the municipal building is the only building of its kind in Hickory and is still being used for the purposes hereinbefore named.

Upon the foregoing facts the trial judge was of the opinion that the city had no power to lease the auditorium, and restrained the defendants from proceeding further with negotiations for said lease, and thereupon the defendants appealed.

*T. Manly Whitener and A. A. Whitener for plaintiffs.*
*W. B. Councill and Eddy S. Merritt for defendants.*

BROGDEN, J. The following question of law is presented: Does the city of Hickory have power to make the lease described in the findings of fact?

The charter of the city of Hickory is chapter 68 of the Public Laws of 1913. It is provided "that this charter shall be deemed a public act and judicial notice shall be taken thereof in all courts and places whether or not the same has been pleaded or read in evidence." Section 1 of the charter empowers the city of Hickory to "acquire and hold such property, real and personal, as may be devised, bequeathed, sold, or in any manner conveyed to it, and may invest, sell or dispose of same," etc. Section 3 of Article 18 provides that "all questions arising in the administration of government of the city of Hickory and not provided for in this act shall be governed by the laws of the State in such cases made and provided." The general laws of the State authorizing and regulating the sale of property owned by municipal corporations are contained in C. S., 2688, and C. S., 2787 (2). Both of said statutes authorize the sale of municipal property in proper cases, and C. S., 2787 (2) authorizes a municipal corporation to lease property. Construing C. S., 2688, in *Asheville v. Herbert,* 190 N. C., 732, 130 S. E., 861, this Court said: "Of course, this section is held not to apply to such lands as are held in trust for the use of such town (*Southport v. Stanly,* 125 N. C., 26), or such real estate as is devoted to governmental purposes (*Turner v. Comrs.,* 127 N. C., 154; *Carstarphen v. Plymouth,* 180 N. C., 26), or to streets in reference to which adjoining property owners have acquired rights on account of the dedication thereof, and resulting improvements. . . . The record in *Carstarphen v. Plymouth, supra,* shows that the trial court put his decision on the double basis that C. S., 2688, did not give the authority to sell land held for governmental purposes, and that

it had not been complied with." Manifestly the philosophy of the *Southport* and *Carstarphen cases* is that a municipal corporation cannot sell itself out of its exclusively governmental home, or cannot sell property held by it in trust without special authority.

In the case at bar, when the auditorium was originally constructed, it "was equipped with a stage, a picture machine booth, a ticket stand at which to sell tickets for shows that might be held therein, and a moving-picture machine was installed, and from time to time the said auditorium has been rented by the day and night, and for successive days and nights when asked for," etc. Obviously this auditorium was neither dedicated to a governmental purpose in its original construction nor used for governmental purposes thereafter. The mere fact that it is under the same roof as the city police court, city jail and office of the mayor does not in itself impress it with governmental quality or function. Indeed, the cases of *Asheville v. Herbert,* 190 N. C., 732, and *Harris v. Durham,* 185 N. C., 572, 117 S. E., 801, in principle, answer the question of law involved in the affirmative.

Reversed.