STATE v. PHILLIP COOKE, LEON WOLFE, GEORGE SIMKINS, JR., JOSEPH STURDIVENT, SAMUEL MURRAY AND ELIJAH H. HERRING

(Filed 4 June, 1958.)

**1. Criminal Law § 26—**

Conviction by a court without jurisdiction to hear and determine the question of guilt or innocence of defendants is a nullity and will not support a plea of former jeopardy in a subsequent trial upon a valid charge in a court having jurisdiction.

**2. Same: Indictment and Warrant § 13—**

When facts constituting double jeopardy do not appear from the allegations of the bill or warrant, the defense may not be taken advantage of by motion to quash.

**3. Criminal Law §§ 16, 26—**

Where judgment of the superior court on appeal from a municipal county court is arrested for want of jurisdiction because of amendment to the warrant in the superior court, the defendants may thereafter be tried upon a new warrant in the municipal county court. The superior court when sitting in the county in question was without original jurisdiction in the trial of misdemeanors. G.S. 7-64.

**4. Indictment and Warrant § 13—**

A motion to quash on the ground that the court was under duty to take judicial notice of a Federal decision establishing a defense to prosecution, is properly denied, since a motion to quash may not rest upon matters *aliunde* the record.

**5. Trespass § 9—**

The invasion of property in the possession of another is a crime under our laws, the severity of the punishment being measured by the character of the entry.

**6. Same—**

In a prosecution for criminal trespass, the State may either show that the property was in the actual possession of another or that such other

had right to possession, which by operation of law implies possession.

**7. Trespass § 10—**

Where the uncontroverted evidence discloses that the property was in the physical possession of the corporation named in the warrant and that defendants took possession over the protests of the corporation's agent in charge, with nothing in the State's evidence showing or tending to show any right to enter on the part of defendants after having been forbidden to do so, nonsuit is properly denied, the burden being upon defendants to establish that they entered under a *bona fide* belief of right, and that such belief had a reasonable foundation in fact.

**8. Schools §§ 4c, 6b—**

A city school administrative unit is a governmental agency separate and distinct from the city, and such administrative unit, having acquired more land than presently needed for school purposes, has legislative authority to lease the surplus, G.S. 115-126 (5), either for a public or a private purpose so long as it exercises its discretion in good faith.

**9. Schools § 6b—**

Where a city school administrative unit leases surplus property not then needed for school purposes by an instrument stipulating that its use should be for a public or semipublic purpose, the law will presume the parties intended and contemplated use of the property without unlawful discrimination because of race, color, religion or other illegal classification.

**10. Contracts § 12—**

The parties will be presumed to have used language effectuating a lawful purpose rather than one which is unlawful.

**11. Constitutional Law § 20—**

Where the operator of a golf course is charged with making a public or semipublic use of the property, it cannot deny the use of the property to Negro citizens solely because of race.

**12. Criminal Law § 31—**

A court cannot take judicial knowledge of facts found at another time by another court in another action, the judgment roll in such former action not being introduced in evidence.

**13. Constitutional Law § 1: Criminal Law § 123: Trespass § 10—**

Defendants in this prosecution for trespass moved to set aside the verdict on the ground that it had been established by a Federal court in a civil action in which defendants and the corporate owner of the property were parties, that defendants had a legal right to enter upon the land. The judgment roll in the Federal action was not introduced in evidence. *Held:* The State court cannot take judicial notice that the particular facts constituting the basis of this prosecution for trespass were the basis of the adjudication in the Federal court, and therefore defendants were not, as a matter of right, entitled to have the verdict set aside.

STATE *v.* COOKE, WOLFE, SIMKINS, STURDIVENT, MURRAY, HERRING.

**14. Judgments § 32—**

Since the defendants in this prosecution for trespass did not introduce in evidence the judgment roll in a civil action between defendants and the corporate owner of the property, the question of whether the Federal decision precluded prosecution under the doctrine of collateral estoppel was not presented. Whether the doctrine of collateral estoppel would have applied had the judgment roll been introduced in evidence, *quaere?*

APPEAL by defendants from *Fountain, S. J.,* February 3, 1958 Criminal Term of GUILFORD (Greensboro Division).

On 2 December 1957 a warrant issued from the Greensboro Municipal-County Court for Phillip Cooke, charging that on 7 December 1955 he "did unlawfully and willfully enter and trespass upon the premises of Gillespie Park Club, Inc., after having been forbidden to enter said premises."

Similar warrants were on the same day issued for each of the other defendants.

Defendants moved in the Municipal-County Court to quash the warrants. Their motions were overruled. They then entered pleas of not guilty. The court, after hearing the evidence, found each defendant guilty and imposed sentence. Defendants appealed to the Superior Court.

*Attorney General Seawell and Assistant Attorney General Moody for the State.*

*Annie Brown Kennedy, Harold L. Kennedy, William A. Marsh, Jr., and C. O. Pearson for defendant appellants.*

RODMAN, J.  The cases were, without objection, consolidated for trial in the Superior Court.

Before pleading to the merits in the Superior Court, defendants renewed their motions to quash as originally made in the Municipal-County Court. The motions made in apt time were overruled by the court.

Before considering the merits of the cases, we must ascertain if defendants were properly called upon to answer the criminal charges leveled against them. The motions to quash assign three reasons why defendants should not be called upon to answer the allegation that they violated the criminal laws of the State of North Carolina.

*S. v. Cooke,* 246 N.C. 518, 98 S.E. 2d 885, is relied upon for two of the three reasons assigned. An examination of that case is necessary to assay the merits of the motions. The crime with which defendants stand charged is a misdemeanor punishable by fine of $50 or imprisonment for thirty days, G.S. 14-134. The Municipal-County Court has

jurisdiction of the offense charged. In December 1955 these defendants were charged in warrants issuing from that court with trespassing on the property of *Gillespie Park Golf Course.* They were convicted and appealed to the Superior Court. That court's jurisdiction of the cases then before it was derivative and not original. In the exercise of its derivative jurisdiction, it was confined to an inquiry as to the truth of the charges contained in the warrants issuing from the Municipal-County Court. It could not, in the exercise of that jurisdiction, try defendants for a different crime. Nevertheless, the warrants were amended in the Superior Court to charge defendants with a trespass on the property of *Gillespie Park Golf Club, Inc.* Defendants were convicted of the crime charged in the amended warrants. Defendants appealed their conviction to this Court. We held that the amended warrant, by substituting another property owner, charged a different crime from the crime originally charged, and for that reason the Superior Court could not, in the exercise of its derivative jurisdiction, try defendants on the new criminal charge.

Since the conviction by a court without jurisdiction to hear and determine the guilt or innocence of defendants was a nullity and the sentence imposed void, defendants could thereafter be tried when properly charged in a court having jurisdiction. *S. v. Hicks,* 233 N.C. 511, 64 S.E. 2d 871, cert. den. 342 U.S. 381, 96 L. Ed. 629. It is manifest there is here no double jeopardy. *Green v. United States,* 355 U.S. 184, 2 L. Ed. 2d 199, on which defendants rely, has no application to the facts here presented. Double jeopardy is a valid defense when established by the facts. N. C. Constitution, Art. I, sec. 17; *S. v. Mansfield,* 207 N.C. 233, 176 S.E. 761. Where not disclosed by allegations of the bill or warrant, it is not a ground to quash.

In closing the opinion in the previous appeal, the writer, author of the opinion, said: "Defendants may, of course, now be tried under the original warrant since the court was without authority to allow the amendment changing the crime charged; or they may be tried on bills found in the Superior Court for the crime attempted to be charged by the amendment."

The last clause of that opinion is also relied on in the motion to quash. The statement, accurate as to most of the counties of the State, is inaccurate with respect to Guilford and the other counties enumerated in the proviso to G.S. 7-64. The Legislature, in the exercise of its discretion, has denied to the Superior Court sitting in the counties named in the proviso to G.S. 7-64 the right to exercise concurrent jurisdiction with inferior courts in the trial of misdemeanors. Because of the limitations so imposed on the jurisdiction of the Superior Court of Guilford County, it could not exercise original jurisdiction of the

crime charged, namely, trespass after being forbidden, and if defendants were to be prosecuted for the trespass presently charged, the prosecution had to originate in a court inferior to the Superior Court. This is made clear in the concurring opinion of Justice Parker, who said: "It seems plain that a verdict of conviction or acquittal on the warrants in this case as drawn would not be a bar to the new warrants in the form to which they were changed by the amendments."

The third and final reason assigned for quashing the warrants is the refusal of the court to take judicial notice of a judgment in a suit by defendants against the City of Greensboro, the Greensboro City Board of Education, and Gillespie Park Golf Club, Inc. (*Simkins v. City of Greensboro,* 149 F Supp. 562) which adjudged the plaintiffs in that suit had been denied the privilege of using the property involved in that litigation because of their color or race. A motion to quash is a proper method of testing the sufficiency of the warrant, information, or bill of indictment to charge a criminal offense. It is not a means of testing the guilt or innocence of the defendant with respect to a crime properly charged. "The court, in ruling on the motion, is not permitted to consider extraneous evidence. Therefore, when the defect must be established by evidence *aliunde* the record, the motion must be denied." *S. v. Cochran,* 230 N.C. 523, 53 S.E. 2d 663; *Richardson v. State,* 4 S.W. 2d 79; 27 Am. Jur., 695.

Since none of the reasons nor all combined sufficed to sustain the motion to quash, the court correctly overruled the motion and put defendants on trial for the offense with which they were charged.

To invade property in the possession of another is a crime under our laws. The severity of the punishment for such invasion is measured by the character of the entry. But the essential ingredient in the crime is possession by the person named in the warrant. If the possession is actual, the State need only establish that fact, but if the State fails to establish actual possession, it must establish a right to possession which by operation of law implies possession. *S. v. Clyburn,* 247 N.C. 455; *S. v. Cooke, supra; S. v. Baker,* 231 N.C. 136, 56 S.E. 2d 424.

Defendants do not controvert the fact that the corporation named in the warrant had physical possession of the property nor do they deny that over the protest of the agent of the corporation they took possession. The conduct depicted and not denied would suffice to convict defendants of a forcible trespass. G.S. 14-126. It could easily have resulted in a serious breach of the peace. The State did not, however, charge them with that offense. It charged only the less grave offense of entry after being forbidden. As a defense to that charge, it is sufficient for defendants to establish that they entered under a *bona*

*fide* belief of a right to so enter, which belief had a reasonable foundation in fact. *S. v. Faggart,* 170 N.C. 737, 87 S.E. 31; *S. v. Wells,* 142 N.C. 590; *S. v. Fisher,* 109 N.C. 817, but the burden is on the defendant to establish facts sufficient to excuse his wrongful conduct. *S. v. Durham,* 121 N.C. 546; *S. v. Wells, supra.* There was nothing in the State's evidence showing or tending to show any right on the part of defendants to enter after having been forbidden to do so. Hence the court correctly refused to allow defendants' motion for nonsuit.

Defendants offered in evidence a lease dated 19 April 1949 from the Board of Trustees of the Greensboro City Administrative Unit to Gillespie Park Golf Club, Inc. This lease recited that the property therein described had in 1947 been leased.to the City of Greensboro so that the city might operate a golf course thereon, that Greensboro had agreed to cancel its rights under the lease, that lessor was of the opinion that it would not need the property for school purposes during the next ensuing five years and "since a nine hole golf course has been laid out thereon, the Board of Trustees is of the opinion that it is advisable to lease the property to the Golf Club in order that its use as a golf course may be continued during the term of this lease, such use being, in the opinion of the Board of Trustees, a public or semipublic use." The lease was for a period of five years at a rental of $1000 per annum, but with a provision that lessor might cancel upon sixty days' notice if the property was needed for school purposes or if lessor desired to sell. An extension agreement was put in evidence extending lessee's term. The asserted trespass occurred during the extended term.

There is evidence that lessee had, during its term, expended more than $100,000 in enlarging the course from a nine-hole course to an eighteen-hole course, constructing a club house, and making other improvements. Defendants offered in evidence bylaws adopted by lessee. The only two which may have any pertinency to this action are sections 1 and 2 of article 1. They provide: "SECTION 1—Membership. Membership in this corporation shall be restricted to members who are approved by the Board of Directors for membership in this Club. There shall be two types of membership; one, the payment of a stipulated fee of $30.00 or more, plus tax, shall cover membership and greens fees. The other type of membership shall be $1.00, plus tax, but this type of member shall pay greens fees each time he uses the course. The greens fees and the amount of membership fees may be changed by the Board of Directors at any time upon two-thirds vote of the members of the Board. SECTION 2—Use of Golf Facilities. The golf course and its facilities shall be used only by members, their invited guest, members in good standing of other golf clubs, members

of the Carolina Golf Association, pupils of the Professional and his invited guests."

The City Administrative Unit, a governmental agency separate and distinct from the City of Greensboro, had no authority to operate recreational facilities which were not in some way related to the operation of the public school system. The Legislature created both County and City Administrative Units "for purposes of school administration." G.S. 115-4. The Administrative Unit, having acquired more land than was presently needed for school purposes, had legislative authority to lease the surplus. G.S. 115-126(5), *Cline v. Hickory*, 207 N.C. 125, 176 S.E. 250; 38 Am. Jur. 169. In the exercise of its discretion it could in good faith lease for a public or a private purpose. Prior to its lease to Gillespie Park Club, it had leased the property to the City of Greensboro. The City had apparently used it for recreational purposes and had erected a golf course thereon. When that lease terminated, the school authorities leased to a private corporation, but in their lease were careful to state that lessee was taking and would use it for public or semipublic purposes, namely, the operation of a golf course. Having expressly declared that the use which the lessee would make was a public or semipublic use, the law will presume the parties intended and contemplated that the property should be used without unlawful discrimination because of race, color, religion, or other illegal classification. "It is an elementary rule of construction that parties will be presumed to have used language effectuating a lawful purpose rather than one which is unlawful." *Beasley v. R.R.*, 145 N.C. 272; *Newberry v. City of Andalusia*, 57 So. 2d 629. Since the operator of the golf club was charged with making a public or semipublic use of the property, it could not deny the use of the property to citizens simply because they were Negroes. This Court gave definite recognition to the principle of equality of treatment as between whites and Negroes nearly three quarters of a century ago. *Puitt v. Commissioners*, 94 N.C. 709.

*Dawson v. Mayor and City Council of Baltimore City*, 220 F 2d 386; *Lawrence v. Hancock*, 76 F Supp. 1004; *Tate v. Department of Conservation and Development*, 133 F Supp 53; *Culver v. City of Warren*, 83 N.E. 2d 82, cited and relied upon by appellants are but applications of an established legal principle to the factual situations found to exist in each of those cases. This case in no wise questions the soundness of the legal principles there enunciated.

Since the decision in *Brown v. Board of Education*, 347 U.S. 483, 98 L. ed. 873, 74 S Ct 686, separation of the races in the use of public property cannot be required. Judge Fountain expressly charged the jury that defendants could not be discriminated against because of

color. He charged: "Now as to that question which arises upon the evidence, I instruct you then, ladies and gentlemen of the jury, that under the law as determined by the United States Court and as pronounced by them, the Gillespie Golf Club, Inc., by leasing the land from the City of Greensboro to use as a golf course was subjected to the same obligations as the City of Greensboro would have been had it operated a golf course itself. It was subjected to the same rights as the City would have had, the same obligations and same responsibilities; that is to say, the law would not permit the City and, *therefore would not permit its lessee, the Gillespie Park Golf Club, Inc., to discriminate against any citizen of Greensboro in the maintenance and operation and use of a golf course. It could not exclude either defendant because of his race or for any other reason applicable to them alone;* that is to say, they were entitled to the same rights to use the golf course as any other citizen of Greensboro would be provided they complied with the reasonable rules and regulations for the operation and maintenance and use of the golf course. They would not be required to comply with any unreasonable rules and regulations for the operation and maintenance and use of the golf course."

It will be observed that Judge Fountain, in his charge, treated the lease as though it were made by the City of Greensboro in the exercise of one of its corporate functions. In fact the lease was made by the school unit which had no duty or right to operate a golf course but which voluntarily provided for public use.

The court further charged: "If the corporation organized and known as the Gillespie Park Golf Club, Inc., if it maintained property and operated and used it for a golf course belonging to the City of Greensboro and if the defendant was a resident of the City of Greensboro, then he had the same right to become a member of the golf club as any other resident of Greensboro, if he was a member of another golf club which had a reciprocal agreement with the Gillespie Park Golf Club to permit members on one course or members of one club playing on the other course, then such defendant and each of them had the same right or had the right to play upon the Gillespie Park Course. If the defendants, or either of them, were guests of some members of the Gillespie Park Golf Club, then they had a right to play upon that course.

"In other words, ladies and gentlemen of the jury, they had the same right under the laws as interpreted by the United States Courts to play on the golf course as any other citizen of the City of Greensboro provided they complied with the reasonable rules and regulations designed for the orderly maintenance and use of the golf course by the citizens of Greensboro."

He further charged, after stating defendants' contentions with respect to their right to play: "I instruct you, members of the jury, if a party entering upon the land has a legal right to do so, of course he may not be convicted of a trespass."

Defendants moved to set aside the verdict of guilty. As the basis for their motion they rely on *Simkins v. City of Greensboro, supra,* decided by the United States District Court in March 1957. Although defendants had the record in that case identified, they did not offer it in evidence. It is not a part of the record presented to us. Our knowledge of the facts in that case is limited to what appears in the published opinion.

Examining the opinion, it appears that ten people, six of whom are defendants in this action, sought injunctive relief on the assertion that Negroes were discriminated against and were not permitted to play on what is probably the property involved in this case. We do not know what evidence plaintiffs produced in that action. It is, however, apparent from the opinion that much evidence was presented to Judge Hayes which was not before the Superior Court when defendants were tried. It would appear from the opinion that the entry involved in this case was one incident on which plaintiffs there relied to support their assertion of unlawful discrimination, but it is manifest from the opinion that that was not all of the evidence which Judge Hayes had. We are left in the dark as to other incidents happening prior or subsequent to the conduct here complained of, which might tend to support the assertion of unlawful discrimination. On the facts presented to him, Judge Hayes issued an order enjoining racial discrimination in the use of the golf course. Presumably that order has and is being complied with. No assertion is here made to the contrary.

To support their motion, defendants say in their brief: "That to allow the verdict to stand would amount to a collateral attack on the Federal decision." The mere assertion that a court of this State has not given due recognition to a judgment rendered by one of our Federal courts merits serious consideration.

The State challenges the assertion that there has been an attack, collateral or otherwise, on the judgment rendered by the District Court. It maintains that the questions to be answered are these: (1) Should a court take judicial knowledge of facts found at another time by another court in another action; and if this question be answered in the affirmative, (2) is the State, in a criminal prosecution, concluded by facts found in a civil action to which it is not a party?

Since defendants for reasons best known to themselves elected not to offer in evidence the record in the Federal court case, it is apparent that the first question propounded must be answered. Unless we are to de-

part from previous adjudications by this Court and similar decisions by the Federal courts and the courts of sister States, the answer to that question must be no.

Speaking with respect to judicial notice, Chief Justice Marshall said: "The looseness which would be introduced into judicial proceedings would prove fatal to the great principles of justice, if the judge might notice and act upon facts not brought regularly into the cause. Such a proceeding, in ordinary cases, would subvert the best established principles, and overturn those rules which have been settled by the wisdom of ages." *U. S. v. Wilson,* 7 Pet. 150, 8 L. ed. 640.

Mr. Justice Miller said: "While it is certainly true that the pendency of a suit in one court is not a defense, though it may sometimes be good in abatement, to another suit on the same cause of action in another court of concurrent jurisdiction, it may be considered as established that when a judgment is recovered against the defendant in one of those courts, if it is a full and complete judgment on the whole cause of action, it may be pleaded as a defense to the action in that court where it is pending and undecided. Neither court would be bound to take notice of the judgment in the other court judicially." *Schuler v. Israel,* 120 U.S. 506, 30 L. ed. 707. To like effect see *S. v. McMilliam,* 243 N.C. 775, 92 S.E. 205; *Reid v. Holden,* 242 N.C. 408, 88 S.E. 2d 125; *Hampton v. Pulp Co.,* 223 N.C. 535, 27 S.E. 2d 538; *Daniel v. Bellamy,* 91 N.C. 78; Bluthenthal v. Jones, 208 U.S. 64, 52 L. ed. 390; *Williams-Perry v. Reeder,* 17 N.W. 2d 98; *Naffah v. City Deposit Bank,* 13 A 2d 63; *Belyeu v. Boman,* 41 So. 2d 290; *James v. Unknown Trustees, Etc.,* 220 P 2d 831; *Swak v. Department of Labor & Industries,* 240 P 2d 560; *Paridy v. Caterpillar Tractor Co.,* 48 F 2d 166; *Morse v. Lewis,* 54 F 2d 1027; *Helms v. Holmes,* 129 F 2d 263; *Atlantic Fruit Co. v. Red Cross Line,* 5 F 2d 218; *Polzin v. National Co-op Refinery Ass'n.,* 266 P 2d 293; *Divide Creek Irrig. Dist. v. Hollingsworth,* 72 F 2d 859, 96 A.L.R. 937, with annotations; *White v. Central Dispensary & Emergency Hospital,* 99 F 2d 355, 119 A.L.R. 1002; *Robinson v. Baltimore & O. R. Co.,* 222 U.S. 506, 56 L. Ed. 288; 31 C.J.S. 627; 20 Am. Jur. 102.

Because the judgment in the case of *Simkins v. Greensboro* was not in evidence, the court had no knowledge in a legal sense of any facts there determined, and could make no pronouncement of law with respect to facts which were not in evidence. Judge Hayes' published opinion was available. That opinion is a declaration of the law on the facts which Judge Hayes found.

Since the court was not required to take judicial notice of the judgment in the civil action, we are not called upon to determine the effect which should have been given if offered in evidence.

When the doctrine of collateral estoppel should be applied is not always easily solved. In *Van Schuyver v. State,* 8 P. 2d 688, it was held that a judgment in a civil action between prosecuting witness and defendant which determined the ownership of domestic fowl could not be used by the defendant in a criminal action to estop the State from prosecuting him on a charge of larceny. Similar conclusions have been reached in other jurisdictions with respect to the ownership of property, *State v. Hogard,* 12 Minn. 293; *People v. Leland,* 25 N.Y.S.. 943; *Hill v. State,* 3 S.W. 764 (Tex.)

It is said in the annotation to *Mitchell v. State,* 103 Am. St. Rep. 17: "When the previous judgment arose in a case in which the state or commonwealth was the prosecutor or plaintiff and the defendant in the case at bar was also the defendant, and the judgment was with reference to a subject which is material to the case at bar, the doctrine of *res judicata* applies. (citations) But where the judgment to which it is sought to apply the doctrine of *res judicata* was rendered in a civil proceeding to which the state was not a party, or in a criminal proceeding to which the defendant in the case at bar was not a party, the doctrine of *res judicata* does not apply. (citations)"

The Supreme Court of the United States has recognized and applied the law as there announced to differing factual situations. Compare *U. S. v. Baltimore & O. R. Co.,* 229 U. S. 244, 57 L. Ed. 1169, and *Williams v. N. C.,* 325 U.S. 226, 89 L. ed. 1577. Other illustrations may be found in: *S. v. Dula,* 204 N.C. 535, 168 S.E. 836; *Warren v. Ins. Co.,* 215 N.C. 402, 2 S.E. 2d 17; *Powers v. Davenport,* 101 N.C. 286; *S. v. Boland,* 41 N.W. 2d 727; *People v. McKenna,* 255 P. 2d 452; *S. v. Morrow,* 75 P. 2d 737; *S. v. Cornwell,* 91 A. 2d 456; *S. v. Greenberg,* 109 A. 2d 669. Extensive annotations appear as a note to *Green v. State,* 87 A.L.R. 1251; 30A Am. Jur. 518. Defendants were not, as a matter of right, entitled to have the verdict set aside.

The exceptions to the admission and exclusion of evidence have been examined. We have found none which indicates prejudicial error or appears to warrant discussion.

We find

No error.