CHARLES F. KEIGER AND MAMILEE ENTERPRISES, INC. v. THE WINSTON-SALEM BOARD OF ADJUSTMENT; J. A. HANCOCK, ROY SETZER, C. C. SMITHDEAL, JR., JOHN MANNING, WILLIAM F. THOMAS, SAM OGBURN AND MRS. MARTHA CATES, AND THE WINSTON-SALEM-FORSYTH COUNTY PLANNING BOARD; F. GAITHER JENKINS, ZEB B. STEWART, A. L. EVANS, HAMPTON D. HAITH, CLIFTON E. PLEASANTS, H. C. PORTER, J. C. SMITH, M. C. BENTON, JR., DAVID W. DARR

No. 33

(Filed 29 January 1971)

1. Municipal Corporations § 30— power to zone

The original zoning power of the State reposes in the General Assembly, which has delegated this power to the "legislative body" of municipal corporations. G.S. 160-172 *et seq.*

2. Municipal Corporations § 30— limitations on power to zone

The power to zone, conferred upon the "legislative body" of a municipality, is subject to the limitations of the enabling act.

3. Municipal Corporations § 30— zoning — denial of special use permit for mobile home park — unlawful exercise of legislative power by Board of Adjustment

Where a municipal ordinance provides for the issuance by the Board of Adjustment of a special or conditional use permit for the construction of a mobile home park on land located in a B-3 zone upon the applicant's compliance with prescribed requirements, and an applicant's plans for a mobile home park in a B-3 zone met all the requirements of the ordinance, the Board of Adjustment's denial of a permit to the applicant on the ground that the proposed conditional use is not in accord with the "purpose and intent" of the ordinance constituted an unlawful exercise of legislative power in violation of Article II, Section 1, of the Constitution of North Carolina.

APPEAL by petitioners under G.S. 7A-30(1) from the decision of the Court of Appeals reported in 8 N.C. App. 435.

The Court of Appeals affirmed the judgment entered by *Exum, J.*, at January 5, 1970 Civil Session of FORSYTH Superior Court, which, after review on *certiorari*, affirmed the denial by the Winston-Salem Board of Adjustment of an application for a special use permit to construct a mobile home park upon a 14.5-acre site owned by petitioner Mamilee Enterprises, Inc.

A comprehensive zoning ordinance was adopted by the Board of Aldermen of Winston-Salem pursuant to authority conferred by "Article 14, Chapter 160, as amended, of the General Statutes of North Carolina, and Chapter 677 of the 1947 Session Laws of North Carolina, as amended."

When petitioners' application for a special use permit was filed, the 14.5-acre site was part of a larger acreage zoned B-3 (Highway Business).

Section 29-7F of the Ordinance provides:

"F. *Conditional Uses Requiring Special Use Permits.*

1. The Board of Adjustment may authorize the issuance of a special use permit, as provided in Section 29-19.A.2.c.(1), for uses included in the following table, *but only in the districts where such uses are permitted,* and only after receiving from the City-County Planning Board a report finding that the proposed building or site will comply with all applicable requirements of this ordinance and after public notice and public hearing.

2. Any application for a special use permit shall be submitted in compliance with Section 29-19, Administration and Records, and shall be reviewed by the Planning Board prior to consideration by the Board of Adjustment." (Our italics.)

B-3 is one of the districts in which the construction of a mobile home park is a conditional use requiring a special use permit. The Ordinance (Table of Conditional Uses Requiring Special Use Permit) requires that, in order to acquire a special use permit for the construction of a mobile home park in a B-3 district, the applicant-owner must comply with the prescribed "Site Requirements" and with the "Other Requirements" set forth therein.

The judgment entered by Judge Exum contains the following finding of fact: "(T)he Board of Adjustment found, and all parties agreed, that petitioners' plans met the site requirements and other physical requirements set forth in the 'Table of Conditional Uses' applicable to mobile home parks."

The ground on which Judge Exum affirmed the denial by the Board of Adjustment of petitioners' application for the special use permit is epitomized in the following finding: "Disregarding the words 'and the public interest' appearing in the above quoted portion of Section 29-19.A.2.c.(1), the action of the Board of Adjustment denying petitioners' application is clearly based upon purposes set forth in Section 29-2 of the Zoning Ordinance, such as 'to lessen congestion in the streets,' and 'the preservation of property values.' "

*R. Kason Keiger for petitioner appellants.*

*Womble, Carlyle, Sandridge & Rice by William F. Womble and Zeb E. Barnhardt for respondent appellees.*

BOBBITT, Chief Justice.

The principal constitutional question presented is whether the denial of petitioners' application for the special use permit constituted an unlawful exercise of legislative power by the Board of Adjustment in violation of Article II, Section 1, of the Constitution of North Carolina.

[1, 2] The original zoning power of the State reposes in the General Assembly. *Marren v. Gamble,* 237 N.C. 680, 75 S.E. 2d 880. It has delegated this power to the "legislative body" of municipal corporations. G.S. 160-172 *et seq.; In re Markham,* 259 N.C. 566, 131 S.E. 2d 329, and cases cited. Within the limits of the power so delegated, the municipality exercises the police power of the State. *Raleigh v. Fisher,* 232 N.C. 629, 61 S.E. 2d 897. The power to zone, conferred upon the "legislative body" of a municipality, is subject to the limitations of the enabling act. *Marren v. Gamble, supra; State v. Owen,* 242 N.C. 525, 88 S.E. 2d 832.

G.S. 160-172 provides: "For the purpose of promoting health, safety, morals or the general welfare of the community, the legislative body of cities and incorporated towns is hereby empowered to regulate and restrict the height, number of stories

and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes. Such regulations may provide that a board of adjustment may determine and vary their application in harmony with their general purpose and intent and in accordance with general or specific rules therein contained. *Such regulations may also provide that the board of adjustment or the local legislative body may issue special use permits or conditional use permits in the classes of cases or situations and in accordance with the principles, conditions, safeguards, and procedures specified therein, and may impose reasonable and appropriate conditions and safeguards upon such permits.*" (Our italics.)

G.S. 160-173 provides: "For any or all said purposes it may divide the municipality into districts of such number, shape and area as may be deemed best suited to carry out the purposes of this article; and within such districts it may regulate and restrict the erection, construction, reconstruction, alteration, repair or use of buildings, structures or land. All such regulations shall be uniform for each class or kind of building throughout each district, but the regulations in one district may differ from those in other districts."

G.S. 160-174 provides: "Such regulations shall be made in accordance with a comprehensive plan and *designed to lessen congestion in the streets;* to secure safety from fire, panic and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrocwding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirements. Such regulations shall be made with reasonable consideration, among other things, as to the character of the district and its peculiar suitability for particular uses, *and with a view to conserving the value of buildings and encouraging the most appropriate use of land* throughout such municipality." (Our italics.)

G.S. 160-175 relates to the method of procedure by which "such regulations and restrictions and the boundaries of such districts shall be determined, established and enforced, and from time to time amended, supplemented or changed," by "(t)he legislative body of such municipality."

G.S. 160-178 authorizes the "legislative body" to provide for the appointment and compensation of "a board of adjustment" and prescribes the procedures and functions of such board.

Here, the Board of Alderman, Winston-Salem's "legislative body," determined that the construction of a mobile home park is *a conditional permissible use* of land in a B-3 zone. In addition, it prescribed with particularity the conditions prerequisite to the issuance of a special or conditional use permit for the construction of a mobile home park. The nature of the prescribed requirements is indicated by the following brief excerpt, *viz.:* "The zoning lot for a mobile home park shall be not less than two and one-half acres. Any mobile home park shall contain not fewer than ten mobile home spaces for initial development. The maximum number of mobile homes per gross acre in a mobile home park shall be ten. Mobile homes shall be parked or harbored in such a manner that neither the end-to-end clearance nor the lateral clearance between mobile homes, including enclosed extensions thereof, shall be less than 20 feet and no mobile home shall be located nearer than 20 feet to any building on the premises."

In accordance with the authority conferred by the italicized portion of G.S. 160-172, the Ordinance provides for the issuance by the Board of Adjustment of a special or conditional use permit for the construction of a mobile home park on land located in a B-3 zone upon the applicant's compliance with prescribed requirements.

Section 29-19.A.2.c.(1), entitled "Special Use Permits," is quoted in full in the opinion of the Court of Appeals. The decisions of the Superior Court and of the Court of Appeals are based on these provisions thereof: "In acting upon an application for a special use permit, the Board of Adjustment shall consider, and base its decision upon, the information submitted, the findings of the City-County Planning Board, *the purpose and intent of this ordinance,* and the public interest. No provision of this ordinance shall be interpreted as conferring upon the Board of Adjustment the authority to approve an application for a special use permit for any use except as authorized in Section 29-7.F and 29-11.B. In approving an application for the issuance of a special use permit, the Board of Adjustment may impose additional reasonable and appropriate conditions and safeguards to protect the public health, safety, morals, and general welfare, the

value of neighboring properties, and the health and safety of neighboring residents." (Our italics.)

The Board of Adjustment did not attempt to "impose additional reasonable and appropriate conditions and safeguards" but unconditionally denied petitioners' application for a special or conditional use permit.

The application for the special or conditional use permit here involved was filed subsequent to our decision in *Jackson v. Board of Adjustment,* 275 N.C. 155, 166 S.E. 2d 78. Jackson involved the comprehensive zoning ordinance adopted by the board of commissioners of Guilford County pursuant to authority conferred by Article 20B, Chapter 153, of the General Statutes of North Carolina, codified as G.S. 153-266.10 *et seq.* G.S. 160-172 and G.S. 160-173 confer upon the legislative bodies of cities and incorporated towns essentially the same authority as that conferred upon boards of county commissioners by G.S. 153-266.10 and G.S. 153-266.11, respectively, quoted in pertinent part in Jackson. It was held in Jackson: "So much of Section 6-13B of this ordinance as requires the Board of Adjustment to deny a permit for the establishment of a mobile home park in the A-1 Agricultural District unless it finds 'that the granting of the special exception will not adversely affect the public interest' is, therefore, beyond the authority of the Board of County Commissioners to enact and so is invalid."

In the light of Jackson, the Superior Court and the Court of Appeals treated as invalid the portion of Section 29-19.A.2.c. (1) which purported to authorize the Board of Adjustment to base its decision upon what it considered favorable or adverse to "the public interest." They base decision on the portion of this section of the Ordinance which purports to authorize the Board of Adjustment to deny an application for a special or conditional use permit if the Board of Adjustment finds that the special or conditional use for which the application is made is contrary to the "purpose and intent" of the Ordinance.

[3] Section 29-2 of the Ordinance, quoted in the opinion of the Court of Appeals and referred to therein as the "purpose and intent" clause of the Ordinance, sets forth in detail the purposes for which the Ordinance was adopted. The purposes set forth in Section 29-2 are in substance the purposes set forth in G.S. 160-172 *et seq.* These are the purposes for which the General

Assembly delegated its power to zone to the Board of Aldermen, Winston-Salem's "legislative body." In the exercise of this grant of power by the Board of Aldermen, the 14.5-acre site was included in a B-3 zone where, according to the Ordinance, the construction of a mobile home park is a conditional permissible use. Precise conditions were set forth by the Board of Aldermen as requirements for the granting of a special or conditional use permit by the Board of Adjustment. Petitioners complied with these requirements. It would constitute an unlawful delegation of the legislative power vested by the General Assembly in the Board of Aldermen of Winston-Salem to allow the Board of Adjustment to deny such permit on the ground *it* did not consider the use *specified in the Ordinance as a conditional permissible use* to be in accord with the "purpose and intent" of the Ordinance. We perceive no substantial difference between the denial of a permit on the ground the conditional use is adverse to the public interest and the denial thereof on the ground the conditional use is not in accord with the "purpose and intent" of the Ordinance. Hence, the denial of petitioners' application on this ground constituted an unlawful exercise of legislative power by the Board of Adjustment in violation of Article II, Section 1, of the Constitution of North Carolina.

As stated by Justice Lake in Jackson: "Under those statutes, (G.S. 160-172 *et seq.*), this Court has held that the legislative body of the municipal corporation may not delegate to the municipal board of adjustment the power to zone; that is, the power originally vested in the General Assembly to legislate with reference to the use which may be made of land and the structures which may be erected or located thereon. *In re O'Neal,* 243 N.C. 714, 92 S.E. 2d 189; *James v. Sutton,* 229 N.C. 515, 50 S.E. 2d 300."

As stated by Justice Sharp in *In re Application of Ellis,* 277 N.C. 419, 425, 178 S.E. 2d 77, 80: "A special exception within the meaning of a zoning ordinance is one which is expressly permitted in a given zone upon proof that certain facts and conditions detailed in the ordinance exist. It is granted by the board, after a public hearing, upon a finding that the specified conditions have been satisfied."

This case does not involve the function and authority of a board of adjustment in respect of alleged hardship situations relating to property within a particular zone. Under the circum-

stances of the present case, denial of petitioners' application would constitute an unlawful rezoning of petitioners' property by the Board of Adjustment.

Respondents' motion to dismiss petitioners' appeal for alleged failure to comply with Rule 3 (b) of the Supplemental Rules of the Supreme Court (274 N.C. at 604) has been considered and is denied.

The record discloses the additional matters set forth below.

After the Board of Adjustment denied their petition, petitioners applied for and obtained a writ of *certiorari*. On October 28, 1969, in compliance with the writ, respondents filed the documents and transcript of evidence involved in the proceedings before the Board of Adjustment and also filed a "Response to Petition for Certiorari." On January 14, 1970, prior to the hearing before Judge Exum, respondents filed a "Motion to Dismiss" in which they asserted that petitioners' application had been rendered moot by an "ordinance passed by the Board of Aldermen on November 3, 1969, rezoning a portion of their property from B-3 and R-6 to R-4, which category does not allow special use permits for the construction of a mobile home park." Attached to this motion is a copy of what purports to be an ordinance adopted by the Board of Aldermen amending the "Winston-Salem City Zoning Ordinance and the Official Zoning Map of the City of Winston-Salem" by changing "from B-3 and R-6 to R-4 the zoning classification" of two separately described (by metes and bounds) tracts of land.

The record contains no stipulation, finding or evidence with reference to the adoption by the Board of Aldermen of an ordinance containing the provisions set out in the exhibit attached to respondents' "Motion to Dismiss." Nor does the record contain a stipulation, finding or evidence as to what portion, if any, of the 14.5-acre site is included in the tracts described in the exhibit.

The recitals in Judge Exum's judgment include the following: "(T)his cause also being heard upon respondents' motion to dismiss on the ground that the questions raised by petitioners in this action have been rendered moot by the subsequent ordinance passed by the Board of Aldermen on November 3, 1969, rezoning the property in question from B-3 to R-4, which category does not allow special use permits for the construction of

a mobile home park." The first numbered (adjudicatory) paragraph of the judgment is as follows: "1. Respondents' motion to dismiss is denied, to which ruling the respondents, in open Court, excepted."

The opinion of the Court of Appeals contains the following: "Like the superior court, we have not considered or passed upon respondents' contention that the questions raised by petitioners have been rendered moot by an ordinance enacted by the Winston-Salem Governing Board on 3 November 1969 rezoning the property in question from B-3 and R-6 to R-4. Proper procedures are available to the parties to determine the effect of that ordinance should they desire a determination."

Judge Exum decided in favor of respondents without regard to the effect, if any, of an ordinance changing the zone of all or a part of the 14.5-acre site from R-3 to R-4. Apparently, for this reason, facts with reference to the adoption of a rezoning ordinance such as that referred to in respondents' "Motion to Dismiss" were not developed. Nothing in the record affords a basis for our consideration of the legal significance, if any, of such a rezoning ordinance.

We conclude that the denial by the Board of Adjustment of petitioners' application was unlawful and in violation of petitioners' constitutional rights; that the decisions of the Superior Court and of the Court of Appeals, which affirmed the action of the Board of Adjustment, are erroneous; and that the significance, if any, of a rezoning ordinance, if any, enacted subsequent to the denial by the Board of Adjustment of petitioners' application, is for further consideration in the Superior Court.

Accordingly, the judgment of the Court of Appeals is reversed. The cause is remanded to the Court of Appeals for the entry of its judgment remanding the case to the Superior Court for the entry of judgment not inconsistent with the law as stated in this opinion. Upon further consideration in the Superior Court, all parties should be afforded an opportunity to develop all pertinent facts with reference to the adoption of the alleged rezoning ordinance of November 3, 1969, and its effect, if any, upon petitioners' asserted right to construct a mobile home park on the 14.5-acre site. Unless precluded by such rezoning ordinance, petitioners are entitled to have issued the special permit for which they have applied.

Reversed and remanded.