STATE OF NORTH CAROLINA v. ROY JOYNER

No. 112

(Filed 31 January 1975)

1. **Indictment and Warrant § 14— motion to quash — constitutionality of ordinance**

    A defendant charged with a violation of an ordinance may challenge the constitutionality of such ordinance by a motion to quash the warrant since there can be no sufficient statement of a criminal offense in a charge of violation of an unconstitutional statute or ordinance.

2. **Municipal Corporations § 30— rezoning ordinance — presumption of validity**

    A duly adopted rezoning ordinance is presumed to be valid and the burden is on the complaining party to show it to be invalid.

3. **Constitutional Law § 23— due process — guaranty against arbitrary legislation**

    Substantive due process is a guaranty against arbitrary legislation, demanding that the law be substantially related to the valid object sought to be obtained.

4. **Municipal Corporations § 30— determination of reasonableness of zoning ordinance — application to individual not made**

    In examining the reasonableness of an ordinance, due process dictates that the court look at the entire ordinance and not only at the provision as it applies to a particular inhabitant of the municipality, and the fact that one citizen is adversely affected by a zoning ordinance does not invalidate the ordinance.

5. **Municipal Corporations § 30— building material salvage yard — removal required by zoning ordinance — constitutionality of ordinance**

    A zoning ordinance which prohibited operation of a building material salvage yard in specified districts, including the one in which defendant maintained his business, and which allowed a grace period of three years after it was adopted for the removal of such business was not so arbitrary, unreasonable, or unrelated to the general welfare of the community as to be unconstitutional by its terms; rather, it represented a conscious effort on the part of the legislative body of the city to regulate the use of land throughout the city and thus promote the health, safety, or general welfare of the community.

6. **Municipal Corporations § 30— zoning ordinance — amortization provision — validity**

    Amortization provisions requiring termination of nonconforming uses within a prescribed period of time are valid if the period of time is reasonable; an amortization period of three years for removal of a building material salvage business was reasonable and the provision was therefore valid.

State v. Joyner

7. **Municipal Corporations § 30— zoning ordinance — removal of building material salvage yard required — no taking of property without compensation**

A zoning ordinance which required that defendant remove his building material salvage yard within three years did not amount to a taking of his property for a public purpose without compensation where, at the time the ordinance was passed, defendant had an oral lease for the property on which his business was located, any improvements which he made would inure to the benefit of the landowner, defendant by his own testimony could dispose of his inventory within the three year period, and with full knowledge that the ordinance required him to remove his business within three years, defendant proceeded to enter into a long-term written lease, continued to make improvements and to operate his business.

Justices COPELAND and EXUM did not participate in the hearing or decision of this case.

Justice LAKE dissenting.

APPEAL by defendant pursuant to G.S. 7A-30(1) from the decision of the Court of Appeals, reported in 23 N.C. App. 27, 208 S.E. 2d 233 (1974), which found no error in the trial before *McConnell, J.,* at the 22 April 1974 Session of FORSYTH Superior Court.

Defendant was convicted on trial *de novo* in the Superior Court on a warrant charging a violation of a zoning ordinance of the city of Winston-Salem. The ordinance, effective 17 September 1968, prohibited operation of a building material salvage yard in specified districts, including those zoned as B-3, and allowed a grace period of three years thereafter for the removal of such business. Defendant operates a building material salvage yard at 4131 N. Patterson Avenue in Winston-Salem within a B-3 zone contrary to the ordinance. Section 29-11 G of the ordinance under which defendant is charged is as follows:

"G. *Removal of Certain Non-Conforming Uses Required*

"1. The following uses, if they are or become non-conforming by virtue of the adoption of this ordinance or of subsequent amendments thereto, shall be removed within three years after the date of adoption hereof or of such amendment:

a. Auto wrecking yards, building material salvage yards, general salvage yards, scrap metal processing yards, and contractors' storage yards

b. Advertising signs in all districts except B-2, other than those advertising signs that are non-conforming only as to size or height."

Defendant does not own the land on which his business is located, but began operation at his present location in 1966 under an oral lease. The record does not disclose the terms of this lease. In 1968, after the adoption of the zoning ordinance, defendant, with notice of this ordinance, entered into a written lease extending until 1979. Upon the expiration of the three-year period following the passage of the ordinance, defendant was informed that his business violated the zoning ordinance. He refused to remove his salvage yard. A warrant charging defendant with a violation of the ordinance was issued on 11 May 1973. In Superior Court defendant made a motion to quash the warrant on the grounds that the ordinance upon which it was based was unconstitutional. This motion was denied.

At trial defendant testified: "I do not deny that I am operating a place that is nonconforming. I know it's a B-3 zone and has been since 1968."

The jury found defendant guilty. From a sentence of 30 days imprisonment suspended for one year on the condition that defendant pay a fine of $50 and costs and that he discontinue the nonconforming use of the property at the end of 12 months, defendant appealed to the Court of Appeals. That court found no error.

Other facts pertinent to decision are set out in the opinion.

*Attorney General James H. Carson, Jr., by Richard N. League, Assistant Attorney General, for the State.*

*Craige, Brawley, by C. Thomas Ross for defendant appellant.*

MOORE, Justice.

Defendant assigns as error the failure of the trial court to quash the warrant on the ground that the ordinance on which it is based is unconstitutional.

[1] A defendant charged with a violation of an ordinance may challenge the constitutionality of such ordinance by a motion to quash the warrant since there can be no sufficient statement of a criminal offense in a charge of violation of an unconstitutional

statute or ordinance. *State v. Atlas,* 283 N.C. 165, 195 S.E. 2d 496 (1973) ; *State v. Brewer,* 258 N.C. 533, 129 S.E. 2d 262 (1963).

As stated by Justice Lake in *State v. Vestal,* 281 N.C. 517, 189 S.E. 2d 152 (1972) :

> "In passing upon such motion, the court treats the allegations of fact in the warrant, or indictment, as true and considers only the record proper and the provisions of the statute or ordinance. *State v. Lee,* 277 N.C. 242, 176 S.E. 2d 772; *State v. McBane,* 276 N.C. 60, 170 S.E. 2d 913; *State v. Cooke,* 248 N.C. 485, 103 S.E. 2d 846; *State v. Andrews,* 246 N.C. 561, 99 S.E. 2d 745. . . . "

Defendant does not question the validity of the entire ordinance. Instead, he questions only the section which provides for termination of certain nonconforming uses. Defendant takes the position that the Court of Appeals should have reversed the trial court's refusal to quash the warrant on the ground that section 29-11 G of the Winston-Salem zoning ordinance he is charged with violating is contrary to the Fifth and Fourteenth Amendments of the Constitution of the United States in that it deprives him of his property without due process of law and represents a taking of his property without compensation.

The zoning power of municipalities is derived from the State. As stated in *Keiger v. Board of Adjustment,* 278 N.C. 17, 178 S.E. 2d 616 (1971) :

> "The original zoning power of the State reposes in the General Assembly. *Marren v. Gamble,* 237 N.C. 680, 75 S.E. 2d 880. It has delegated this power to the 'legislative body' of municipal corporations. G.S. 160-172 *et seq.; In re Markham,* 259 N.C. 566, 131 S.E. 2d 329, and cases cited. Within the limits of the power so delegated, the municipality exercises the police power of the State. *Raleigh v. Fisher,* 232 N.C. 629, 61 S.E. 2d 897. The power to zone, conferred upon the 'legislative body' of a municipality, is subject to the limitations of the enabling act. *Marren v. Gamble, supra; State v. Owen,* 242 N.C. 525, 88 S.E. 2d 832."

On 17 September 1968, G.S. 160-172 in pertinent part provided:

> "For the purpose of promoting health, safety, morals or the general welfare of the community, the legislative

body of cities and incorporated towns is hereby empowered *to regulate* and *restrict* the height, number of stories and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and *the location and use of buildings, structures and land for trade, industry, residence or other purposes. . . .* " (Emphasis added.)

G.S. 160-173 provided:

"For any or all said purposes it may divide the municipality into districts of such number, shape and area as may be deemed best suited to carry out the purposes of this article; and within such districts it *may regulate and restrict* the erection, construction, reconstruction, alteration, repair or *use of buildings, structures or land.* All such regulations shall be uniform for each class or kind of building throughout each district, but the regulations in one district may differ from those in other districts." (Emphasis added.)

G.S. 160-174 provided:

"Such regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provisions of transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration, among other things, as to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and *encouraging the most appropriate use of land throughout such municipality.*" (Emphasis added.)

Acting under the broad authority given the city by these statutes, a comprehensive zoning ordinance was adopted by the Board of Aldermen of Winston-Salem pursuant to these statutes and Chapter 677 of the 1947 Session Laws of North Carolina as amended. The section under which defendant was convicted was a part of that ordinance.

[2] A duly adopted rezoning ordinance is presumed to be valid. *Allred v. City of Raleigh,* 277 N.C. 530, 178 S.E. 2d 432 (1971);

*Schloss v. Jamison,* 262 N.C. 108, 136 S.E. 2d 691 (1964). And the burden is on the complaining party to show it to be invalid. *Heaton v. City of Charlotte,* 277 N.C. 506, 178 S.E. 2d 352 (1971).

As we said in *In Re Appeal of Parker,* 214 N.C. 51, 55, 197 S.E. 706, 709 (1938) :

> "When the most that can be said against such ordinances is that whether it was an unreasonable, arbitrary or unequal exercise of power is fairly debatable, the courts will not interfere. In such circumstances the settled rule seems to be that the court will not substitute its judgment for that of the legislative body charged with the primary duty and responsibility of determining whether its action is in the interest of the public health, safety, morals, or general welfare. [Citations omitted.]"

Defendant first contends that Section 29-11 G, under which he was convicted, is unconstitutional on its face in that it deprives him of his property without due process of law.

[3, 4]  Substantive due process is a guaranty against arbitrary legislation, demanding that the law shall not be unreasonable, arbitrary or capricious, and that the law be substantially related to the valid object sought to be obtained. *West Coast Hotel Co. v. Parrish,* 300 U.S. 379, 81 L.Ed. 703, 57 S.Ct. 578, 108 A.L.R. 1330 (1937) ; *Nebbia v. New York,* 291 U.S. 502, 78 L.Ed. 940, 54 S.Ct. 505, 89 A.L.R. 1469 (1934) ; *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 71 L.Ed. 303, 47 S.Ct. 114, 54 A.L.R. 1016 (1926) ; *Blades v. Raleigh,* 280 N.C. 531, 187 S.E. 2d 35 (1972) ; *Helms v. Charlotte,* 255 N.C. 647, 122 S.E. 2d 817 (1961). In examining the reasonableness of an ordinance, due process dictates that the court look at the entire ordinance and not only at the provision as it applies to a particular inhabitant of the municipality. *Schloss v. Jamison, supra; City of Elizabeth City v. Aydlett,* 201 N.C. 602, 161 S.E. 78 (1931). The fact that one citizen is adversely affected by a zoning ordinance does not invalidate the ordinance. *Blades v. Raleigh, supra,* and cases cited therein; *Bohannan v. San Diego,* 30 Cal. App. 3d 416, 106 Cal. Rptr. 333 (1973).

Defendant's building material salvage yard is located in a B-3 district, in which such business is prohibited. The purpose of the B-3 district is set out in Section 29-6 D 3 a. of the ordinance as follows: "This district seeks to provide areas for the develop-

ment of the business, heavy commercial, or service establishments which locate along the major streets or highways of Winston-Salem and its surrounding area." Section 29-11 G provides that, in the event of an auto wrecking yard, building material salvage yard, general salvage yard, scrap metal processing yard or contractors' storage yard is located in an area zoned by the ordinance to prohibit such use, the user has a three-year grace period to remove the nonconforming use.

Section 29-6 contains a table of uses permitted in Winston-Salem and indicates which uses may be located in each of the thirteen zoning districts. The list of permitted uses covers eleven and one-half pages. Building material salvage yards are permitted in districts zoned as I-3.

[5]  Winston-Salem has sought, through a comprehensive ordinance, to assure that future growth is orderly and in the best interests of its citizens. To further that purpose, the ordinance establishes a three-year period during which defendant may remove his nonconforming use. The method used to terminate nonconforming uses was a legislative decision to be reached by balancing the burden on the individual with the public good sought to be achieved. Section 29-11 G is not so arbitrary, unreasonable, or unrelated to the general welfare of the community as to be unconstitutional by its terms. To the contrary, it represents a conscious effort on the part of the legislative body of the city to regulate the use of land throughout the city and thus promote the health, safety, or general welfare of the community. Defendant's first assignment of error is overruled.

[6]  Defendant next contends that section 29-11 G is invalid on its face in that it permits a taking of private property for a public purpose without compensation contrary to the Fifth and Fourteenth Amendments of the United States Constitution.

The reasoning behind the utilization of amortization provisions to displace nonconforming uses is well stated by Professor Anderson, as follows:

> "Municipalities which seek to terminate nonconforming uses through amortization proceed on the assumption that the public welfare requires that such uses cease, but that summary termination is illegal, impractical, or unfair. They find a middle ground, between immediate cessation of use and the indefinite continuance thereof, by adopting regulations which permit the nonconforming users, or some of

them, to continue for a specified period, but which require them to end the prohibited use upon the expiration of that period. The term 'amortization' is derived from the notion that the nonconforming user can amortize his investment during the period of permitted nonconformity. It is reasoned that this opportunity to continue for a limited time cushions the economic shock of the restriction, dulls the edge of popular disapproval, and improves the prospects of judicial approval." 1 Anderson, American Law of Zoning, sec. 6.65, 446-47 (1968).

North Carolina has neither accepted nor rejected amortization provisions requiring termination of nonconforming uses within a prescribed period of time. Our Court has dealt with the problem of the elimination of nonconforming uses in various ways. In two early cases, *Wake Forest v. Medlin*, 199 N.C. 83, 154 S.E. 29 (1930), and *Ahoskie v. Moye*, 200 N.C. 11, 156 S.E. 130 (1930), this Court upheld ordinances forcing the termination of nonconforming uses without amortization periods. In *Medlin* the city ordinance provided that it was unlawful to erect, build, maintain, or operate any station for the sale or distribution of gasoline, kerosene, or any other petroleum products in any part of the town of Wake Forest west of the Seaboard Railroad tracks after February 1, 1929. The defendant had been operating a filling station in the restricted area since 1905. This Court, in an opinion by Chief Justice Stacy, upheld the ordinance and held that it was within the police power of the State to regulate this business and to declare such use a nuisance if the power is not exerted with unjust discrimination. Chief Justice Stacy then concluded that since "it operates on all alike within the territory affected, and all within the prescribed limits are affected by its terms," it was neither arbitrary nor discriminatory.

In *In re O'Neal*, 243 N.C. 714, 92 S.E. 2d 189 (1956), and *In re Appeal of Hastings*, 252 N.C. 327, 113 S.E. 2d 433 (1960), the Court approved restrictions on the extension of nonconforming uses, and held that a city has the authority to prohibit an enlargement of a nonconforming use.

Amortization provisions have been considered a number of times in other jurisdictions. See Annot., 22 A.L.R. 3d 1134 (1968). The majority of courts that have addressed the question have held that provisions for amortization of nonconforming uses are valid if reasonable. *Standard Oil Co. v. Tallahassee,*

183 F. 2d 410 (5th Cir. 1950) ; *National Advertising Co. v. County of Monterey,* 211 Cal. App. 2d 375, 27 Cal. Rptr. 136 (1962) ; *Los Angeles v. Gage,* 127 Cal. App. 2d 442, 274 P. 2d 34 (1954) ; *Eutaw Enterprises, Inc. v. Baltimore,* 241 Md. 686, 217 A. 2d 348 (1966) ; *Harbison v. Buffalo,* 4 N.Y. 2d 553, 176 N.Y.S. 2d 598, 152 N.E. 2d 42 (1958). See also, Comment, Amortization of Nonconforming Uses, 7 Wake Forest L. Rev. 255 (1971). These cases have held that such regulation of private property does not *per se* constitute a compensable taking, stating:

> " . . . In essence there is no distinction between requiring the discontinuance of a nonconforming use within a reasonable period and provisions which deny the right to add to or extend buildings devoted to an existing nonconforming use, which deny the right to resume a nonconforming use after a period of nonuse, which deny the right to extend or enlarge an existing nonconforming use, which deny the right to substitute new buildings for those devoted to an existing nonconforming use—all of which have been held to be valid exercises of the police power." *Los Angeles v. Gage, supra,* at 459, 274 P. 2d at 44.

As the New York Court of Appeals said in *Harbison v. Buffalo, supra,* at 562-63, 176 N.Y.S. 2d at 605, 152 N.E. 2d at 47:

> " . . . We cannot say that a legislative body may not in any case, after consideration of the factors involved, conclude that the termination of a use after a period of time sufficient to allow a property owner an opportunity to amortize his investment and make other plans is a valid method of solving the problem. . . .

> " . . . When the termination provisions are reasonable in the light of the nature of the business of the property owner, the improvements erected on the land, the character of the neighborhood, and the detriment caused the property owner, we may not hold them constitutionally invalid."

Three-year time limtiations have often been upheld by other courts in zoning proceedings, *Village of Gurnee v. Miller,* 69 Ill. App. 2d 248, 215 N.E. 2d 829 (1966) ; *Naegele Outdoor Advertising Company v. Village of Minnetonka,* 281 Minn. 492, 162 N.W. 2d 206 (1968) ; as have two-year limitations, *Spurgeon v. Board of Commissioners of Shawnee County,* 181 Kan. 1008, 317 P. 2d 798 (1957) ; and one-year limitations,

State v. Joyner

*Standard Oil Company v. Tallahassee, supra; McKinney v. Riley,* 105 N.H. 249, 197 A. 2d 218 (1964) ; *Seattle v. Martin,* 54 Wash. 2d 541, 342 P. 2d 602 (1959). See generally, 1 Anderson, *supra,* § 6.62-6.71; 2 Yokley, Zoning Law and Practice § 16-14 (1965).

We concur in the majority rule as above set out that the provisions for amortization of nonconforming uses are valid if reasonable, and reject the *per se* rule holding all amortization provisions unconstitutional. This assignment of error is overruled.

[7] Defendant finally contends that the ordinance is unconstitutional as applied to him in that it constitutes a taking of his property for a public purpose without compensation.

Defendant began operation of his building material salvage yard on its present site in 1966. The ordinance became effective on 17 September 1968. Later in 1968, after the effective date of the ordinance, defendant signed his first written lease on the property extending to 1979. Prior to that time, the record shows defendant had an oral lease. An oral lease for land is void in North Carolina if the term exceeds three years. G.S. 22-2; *Moche v. Leno,* 227 N.C. 159, 41 S.E. 2d 369 (1947). Thus, at the effective date of the ordinance, defendant, being without a written lease, could have had no more than a three-year vested leasehold interest in the property. Any improvements on the land would inure to the benefit of the landowner. The ordinance provides a three-year grace period for nonconforming uses to relocate. The interference by the city with defendant's vested rights in his leasehold was therefore minimal. Furthermore, under the facts in this case defendant is in no position to complain. He testified: "I have an inventory out there and I turn it over and I could have turned over everything that I sold out there in three years. . . . I know it's a B-3 zone and has been since '68. The only thing that I am contending is that I was out there two years prior to this zoning. So far as I know the law applies to everybody but I do not like the fact that it applies to me. . . . " Defendant further testified that he tried to get the property rezoned, but failed. Despite this, and with full knowledge that the ordinance required him to remove his business within three years, he proceeded to enter into a long-term written lease, continued to make improvements and to operate his business.

Defendant was notified on several occasions after the expiration of the grace period that he was in violation of the law. The zoning inspector so informed defendant on 14 September 1971, 25 July 1972, and 4 May 1973. In addition, defendant was mailed a zoning violation notice on 5 October 1971. Defendant made no effort to comply with the ordinance because he "did not think it was fair." Since the passing of the ordinance in 1968, defendant has operated his nonconforming use for over six years—a part of this time in defiance of the city. Under these facts, we cannot say that the Winston-Salem ordinance which defendant is charged with violating is unconstitutional as applied to defendant. We neither consider nor decide whether this ordinance would be considered "reasonable" had the defendant been the owner in fee.

For the reasons above set out, the decision of the Court of Appeals is affirmed.

Affirmed.

Justices COPELAND and EXUM did not participate in the hearing or decision of this case.

Justice LAKE dissenting.

When the zoning ordinance was adopted the appellant's material storage yard was already in operation. Thus, the appellant could not have been compelled to close his business immediately without compensating him for the taking. The city does not contend otherwise. What it contends is that it may reach the same result by dragging the process out over a period three years because, by permitting him to "amortize" his loss, it hurts him less. This argument is like the classic formula for reducing a dog's pain by cutting off his tail an inch at a time.

The fallacy in the "amortization" argument of the majority opinion is thus stated by the Supreme Court of Missouri in *Hoffman v. Kinealy*, ____ Mo. ____ , 389 S.W. 2d 745:

"To our knowledge, no one has, as yet, been so brash as to contend that such a pre-existing lawful nonconforming use properly may be terminated *immediately*. In fact, the contrary is implicit in the amortization technique itself which would validate a taking *presently* unconstitutional by the simple expedient of *postponing* such taking for a

'reasonable' time. All of this leads us to suggest, as did the three dissenting justices in *Harbison v. City of Buffalo,* [4 N.Y. 2d 533], 152 N.E. 2d at 49, that it would be a strange and novel doctrine indeed which would approve a municipality taking private property for public use without compensation if the property was not too valuable and the taking was not too soon, and prompts us to repeat the caveat of Mr. Justice Holmes in *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 416, 43 S.Ct. 158, 160, 67 L.Ed. 322, 28 A.L.R. 1321, that '[w]e are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change.' "

The appellant's business is a lawful one. It is not contended that it is a nuisance per se or in its manner of operation, nor that it is a threat to the public health, safety or morals. At the time the ordinance was passed, the appellant had no long term lease, but he was in possession of the site with the consent of the owner of the fee and had the legal right to remain there, so long as the owner of the fee would permit, after the termination of his then existing lease. The city could not terminate his short term lease or the ensuring tenancy at will, nor, in my opinion, can it terminate his right to carry on his lawful, nonconforming use of the property without paying him for it.