IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-407-2

Filed 20 August 2024

Lenoir County, No. 19 CVS 525

JOSEPH ASKEW; CHARLIE GORDON WADE III; and CURTIS WASHINGTON, Plaintiffs,

v.

CITY OF KINSTON, a Municipal Corporation, Defendant.

On remand by opinion of the Supreme Court of North Carolina in *Askew v. City of Kinston*, No. 55A23 (N.C. June 28, 2024), vacating and remanding a 29 December 2022 opinion of this Court vacating and remanding an order entered 29 September 2021 by Judge Joshua Willey in Lenoir County Superior Court. Originally heard in the Court of Appeals 30 November 2022.

> *Ralph Bryant Law Firm, by Ralph T. Bryant, Jr., for Plaintiffs-Appellants.*
>
> *Hartzog Law Group LLP, by Dan M. Hartzog, Jr., and Katherine Barber-Jones, for Defendant-Appellee.*

COLLINS, Judge.

Direct claims against the State arising under the North Carolina Constitution are permitted only "in the absence of an adequate state remedy," and where an adequate state remedy exists, those direct constitutional claims must be dismissed. *See Corum v. Univ. of N.C.*, 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992). Here, Plaintiffs filed direct claims alleging that Defendant violated their State

constitutional rights to substantive due process and equal protection by condemning and marking for demolition three properties in Kinston, North Carolina: 110 North Trianon Street and 607 East Gordon Street, owned by Joseph Askew,[1] and 610 North Independence Street, owned by Curtis Washington.

The trial court dismissed those claims on summary judgment.[2] This Court vacated the summary judgment order for lack of subject-matter jurisdiction. *See Askew v. City of Kinston*, 287 N.C. App. 222, 883 S.E.2d 85 (2022). The North Carolina Supreme Court vacated this Court's opinion, opining that "[t]he prospect of agency relief goes to an element of a *Corum* cause of action" rather than the court's jurisdiction, and remanded the case for "a standard de novo review of the merits of the trial court's summary judgment order." *Askew*, No. 55A23, slip op. at 2, 30. On remand, we hold that an adequate state law remedy exists for each of Plaintiffs' distinct *Corum* claims, and we therefore affirm the trial court's summary judgment order dismissing the claims.

## I. The Statutory Condemnation Process and Administrative Relief

At the time Plaintiffs initiated this action, Chapter 160A of the North Carolina General Statutes provided a comprehensive scheme governing the procedures by which a town may condemn buildings and outlining the administrative relief

---

[1] Askew's son was the record owner of these properties when they were first condemned. Ownership was transferred to Askew by deed recorded 24 January 2019.

[2] Plaintiff Charlie Gordon Wade III voluntarily dismissed his complaint without prejudice prior to the order granting summary judgment to Defendant and did not participate in this appeal.

available to individuals whose properties have been condemned.[3]

Under N.C. Gen. Stat. § 160A-426, a building inspector has the authority to declare a building unsafe upon determining that the building is "especially dangerous to life because of its liability to fire or because of bad condition of walls, overloaded floors, defective construction, decay, unsafe wiring or heating system, inadequate means of egress, or other causes." N.C. Gen. Stat. § 160A-426(a). If the owner of a building that has been condemned as unsafe fails to take prompt corrective action, the inspector must notify the owner:

> (1) That the building or structure is in a condition that appears to meet one or more of the following conditions:
>
>> a. Constitutes a fire or safety hazard.
>>
>> b. Is dangerous to life, health, or other property.
>>
>> c. Is likely to cause or contribute to blight, disease, vagrancy, or danger to children.
>>
>> d. Has a tendency to attract persons intent on criminal activities or other activities which would constitute a public nuisance.
>
> (2) That a hearing will be held before the inspector at a designated place and time, not later than 10 days after the date of the notice, at which time the owner shall be entitled to be heard in person or by counsel and to present arguments and evidence pertaining to the matter; and
>
> (3) That following the hearing, the inspector may issue

---

[3] Citing the need for "a coherent organization of statutes that authorize local government planning and development regulation," the General Assembly repealed Article 19 of Chapter 160A of the General Statutes and added Chapter 160D in 2019. An Act to Clarify, Consolidate, and Reorganize the Land-Use Regulatory Laws of the State, §§ 2.1.(a), 2.3, 2019 N.C. Sess. Laws 424, 439 (effective 1 Jan 2021). Chapter 160D "collect[s] and organize[s] existing statutes," and is not intended to "eliminate, diminish, enlarge, [or] expand the authority of local governments . . . ." *Id.* § 2.1.(e)-(f). Article 19 of Chapter 160A remained in effect at all relevant times in this case. *Id.* at 547, § 3.2.

> such order to repair, close, vacate, or demolish the building or structure as appears appropriate.

*Id.* § 160A-428.

> If, upon a hearing held pursuant to the notice prescribed in G.S. 160A-428, the inspector shall find that the building or structure is in a condition that constitutes a fire or safety hazard or renders it dangerous to life, health, or other property, he shall make an order in writing, directed to the owner of such building or structure, requiring the owner to remedy the defective conditions by repairing, closing, vacating, or demolishing the building or structure or taking other necessary steps [within a time period] as the inspector may prescribe.

*Id.* § 160A-429.

"Any owner who has received an order under G.S. 160A-429 may appeal from the order to the city council by giving notice of appeal in writing to the inspector and to the city clerk within 10 days following issuance of the order." *Id.* § 160A-430. "The city council shall hear and render a decision in an appeal within a reasonable time. The city council may affirm, modify and affirm, or revoke the order." *Id.* "In the absence of an appeal, the order of the inspector shall be final." *Id.*

N.C. Gen. Stat. § 160A-393, provides for review in the nature of certiorari by the superior court of the quasi-judicial decisions of decision-making boards under Chapter 160A, Article 19, which includes the condemnation process and the city council's consideration of orders issued pursuant to N.C. Gen. Stat. § 160A-429. *See id.* § 160A-393(a)-(b).

On certiorari review, "the court shall ensure that the rights of petitioners have

not been prejudiced" because the decision being appealed was, inter alia, "[i]n violation of constitutional provisions," "[a]rbitrary or capricious," or "[a]ffected by other error of law." *Id.* § 160A-393(k)(1). The court decides "all issues raised by the petition by reviewing the record," which may be "supplemented with affidavits, testimony of witnesses, or documentary or other evidence if, and to the extent that, the [statutorily prescribed] record is not adequate to allow an appropriate determination" of these issues. *Id.* § 160A-393(j).

If the court concludes that the decision was "based upon an error of law" then it may "remand the case with an order that directs the decision-making board to take whatever action should have been taken had the error not been committed or to take such other action as is necessary to correct the error." *Id.* § 160A-393(l)(3). The court may also "issue an injunctive order requiring any other party to th[e] proceeding to take certain action or refrain from taking action that is consistent with the court's decision on the merits of the appeal. *Id.* § 160A-393(m).

## II.    Factual Background

In 2017, Defendant's city inspectors generated a list of over 150 properties that were unoccupied and would be subject to condemnation under North Carolina law. Inspectors then narrowed the list to 50 properties to prioritize for the condemnation and demolition process based on the following criteria:

   a.  Dilapidated, blighted, and/or burned properties;
   b.  Residential (noncommercial) properties;

    c.  Vacant/unoccupied properties;

    d.  Properties in proximity to a public use, such as a school or a park;

    e.  Properties fronting on or in close proximity to a heavily travelled road;

    f.  Properties in proximity to other qualifying properties (ie, forming part of a "cluster" of dilapidated properties); and

    g.  Properties in an area of police concern.

In September 2017, the city council reviewed and approved the inspectors' criteria and finalized the list of properties to prioritize for condemnation, which included Askew's properties, 110 North Trianon Street and 607 East Gordon Street. Washington's property, 610 North Independence Street, was not included on the original list of 50 properties but was later prioritized for condemnation when inspectors noticed the building was near collapse. The condemnation process advanced for each property as detailed below.

**A. 110 North Trianon Street**

110 North Trianon Street was condemned as dangerous to life on 28 November 2017 because of liability to fire, bad condition of the walls, decay, and unsafe wiring. After a hearing on 9 April 2018, the building inspector issued an order to abate, directing Askew to "remedy the defective conditions within 120 days from the date of this Order, by: Repairing the building or Demolishing the building and clearing the lot of all debris." The order informed Askew of his right to appeal the order to the city council "by giving notice to the [Building Inspector] and the City Clerk within 10

days . . . ."  Askew did not appeal this order.

The building inspector re-inspected 110 North Trianon Street on 6 November 2018 and recommended "[m]oving forward with the condemnation process," noting that "[t]here has not been an observable improvement to the condition of the property."  On 20 November 2018, Askew requested to be heard by the city council. The city council treated Askew's request as an appeal and, after hearing from Askew at the city council meeting on 7 January 2019, the city council decided to proceed with the condemnation process.  Askew announced that he intended to appeal and that he would sue in federal court.  There is no evidence in the record that Askew petitioned the superior court for certiorari.

## B. 607 East Gordon Street

607 East Gordon Street was condemned as dangerous to life because of liability to fire, bad condition of the walls, decay, unsafe wiring, and house damage from fire on 28 November 2017.  After a hearing on 9 April 2018, the building inspector issued an order to abate, directing Askew to "remedy the defective conditions [in three phases] within 60 days from the date of this Order, for the first phase, 120 days for the second phase and 120 days for the third phase by: Repairing the building or Demolishing the building and clearing the lot of all debris."  The order informed Askew of his right to appeal the order to the city council "by giving notice to the [Building Inspector] and the City Clerk within 10 days . . . ."  Askew did not appeal this order.

The building inspector re-inspected 607 East Gordon Street on 16 July and 20 November 2018 and noted that "[p]lans have been provided for the repair," that "[p]ermits have been issued for the repair or demolition," and that "[t]here has been an observable improvement to the condition of the property." On both occasions, the building inspector recommended "[g]ranting the owner [additional time] to obtain the necessary permits and begin repair or demolition." On 5 April 2019, the building inspector re-inspected 607 East Gordon Street and concluded that "Askew has failed to stabilize the structure or protect the building from water damage that continues to cause rot and decay [and] the dangerous conditions listed on the original condemnation order still exist."

## C. 610 North Independence Street

610 North Independence Street was condemned as dangerous to life because of liability to fire, bad condition of the walls, decay, and roof collapsing on 15 November 2018. After a hearing on 21 June 2019, the building inspector issued an order to abate, directing Washington to "remedy the defective conditions within 120 days from the date of this Order, by: Repairing the building or Demolishing the building and clearing the lot of all debris." The order informed Washington of his right to appeal the order to the city council "by giving notice to the [Building Inspector] and the City Clerk within 10 days . . . ." Washington did not appeal this order.

The condemnation process is now complete with respect to all three properties.

## III.    Procedural History

Plaintiffs initially filed a complaint against Defendant in federal court in January 2019, alleging "violations of their [Fourteenth] amendment, substantial due process, equal protection rights, discrimination, disparity and condemnation of a historical home." *Askew v. City of Kinston*, No. 4:19-CV-13-D, 2019 WL 2126690, at *1 (E.D.N.C. May 15, 2019).  Plaintiffs' federal complaint was dismissed in May 2019 for lack of subject-matter jurisdiction. *Id.* at *4.

Plaintiffs then commenced this action by filing a complaint in Lenoir County Superior Court in June 2019, alleging violations of their rights to equal protection and due process under the North Carolina Constitution and seeking a declaratory judgment, injunctive relief, and damages in excess of $25,000.  Defendant filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the rules of civil procedure, which the trial court denied.  Defendant then filed an answer to the complaint, generally denying the material allegations and asserting twelve affirmative defenses, including that "Plaintiffs' claims under the North Carolina Constitution are barred because an adequate state remedy is available" to compensate Plaintiffs for their alleged injuries.  Defendant moved for summary judgment in July 2021, reiterating that "Plaintiffs have failed to establish any evidence that . . . [they] have no adequate alternative remedies."  After a hearing, the trial court entered a written order on 29 September 2021 finding "that there is no

genuine issue as to any material fact" and granting Defendant judgment as a matter of law on all claims. Plaintiffs timely appealed to this Court.

By opinion filed 29 December 2022, this Court vacated the summary judgment order and remanded the case to the trial court with instructions to dismiss Plaintiffs' claims without prejudice for lack of subject-matter jurisdiction. *Askew*, 287 N.C. App. at 230, 883 S.E.2d at 91. Plaintiffs appealed to the North Carolina Supreme Court, which vacated this Court's opinion and remanded for this Court to "first ask whether the administrative process provides an adequate state law remedy for plaintiffs' discrete constitutional challenges," and, if not, to "examine whether a genuine factual dispute exists on the merits of the surviving *Corum* claims." *Askew*, No. 55A23, slip op. at 30.

## IV. Discussion

Plaintiffs argue that the trial court erred by granting summary judgment to Defendants and dismissing their direct constitutional claims.

## A. Standard of Review

We review a trial court's order granting summary judgment de novo. *Proffitt v. Gosnell*, 257 N.C. App. 148, 151, 809 S.E.2d 200, 203 (2017). Under de novo review, this Court "considers the matter anew and freely substitutes its own judgment for that of the lower [court]." *Blackmon v. Tri-Arc Food Sys., Inc.*, 246 N.C. App. 38, 41, 782 S.E.2d 741, 743 (2016) (citations omitted).

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2021). The party moving for summary judgment "bears the burden of showing that no triable issue of fact exists." *CIM Ins. Corp. v. Cascade Auto Glass, Inc.*, 190 N.C. App. 808, 811, 660 S.E.2d 907, 909 (2008) (citation omitted). "This burden can be met by proving: (1) that an essential element of the non-moving party's claim is nonexistent; (2) that discovery indicates the non-moving party cannot produce evidence to support an essential element of his claim; or (3) that an affirmative defense would bar the [non-moving party's] claim." *Id.* (citation omitted). "Once the moving party has met its burden, the non-moving party must forecast evidence demonstrating the existence of a prima facie case." *Id.* (italics and citation omitted).

**B. *Corum* Claims**

The North Carolina Constitution guarantees that "every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law." N.C. Const. art. I, § 18. To protect this guarantee, North Carolina courts recognize that, "in the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution." *Corum*, 330 N.C. at 782, 413 S.E.2d at 289. However, courts must "bow to established claims and remedies" where those vehicles are adequate. *Id.* at 784, 413 S.E.2d at 291. Thus, an essential element of a *Corum* claim is that "there

must be no adequate state remedy." *Deminski v. Sate Bd. of Educ.*, 377 N.C. 406, 413, 858 S.E.2d 788, 794 (2021) (quotation marks and citation omitted).

An adequate remedy need not necessarily provide the relief that a plaintiff seeks. *Washington v. Cline*, 385 N.C. 824, 829, 898 S.E.2d 667, 671 (2024) (citation omitted). Rather, "an adequate remedy is one that meaningfully addresses the constitutional violation[.]" *Id.* (citation omitted). "[T]o be considered adequate in redressing a constitutional wrong, a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim." *Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 339-40, 678 S.E.2d 351, 355 (2009). Additionally, "an adequate remedy must provide the possibility of relief under the circumstances." *Id.* at 340, 678 S.E.2d at 355.

## C. Plaintiffs' Claims

Plaintiffs argue that Defendant's condemnation practices violated their State constitutional rights to substantive due process and equal protection. Each of these rights is granted by Article I, Section 19 of the North Carolina Constitution, which states:

> No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land. No person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, religion, or national origin.

N.C. Const., art. I, § 19. "Despite their shared constitutional origins, plaintiffs'

*Corum* claims assert different rights, raise different injuries, and envision different modes of relief." *Askew*, No. 55A23, slip op. at 14. Accordingly, we address each claim independently.

### 1. *Substantive due process*

Plaintiffs assert that Defendant's actions in condemning and scheduling for demolition their properties were arbitrary and therefore violated their right to substantive due process.

"Substantive due process is a guaranty against arbitrary legislation, demanding that the law shall not be unreasonable, arbitrary[,] or capricious, and that the law be substantially related to the valid object sought to be obtained." *State v. Joyner*, 286 N.C. 366, 371, 211 S.E.2d 320, 323 (1975) (citations omitted).

In their complaint, Plaintiffs allege:

> 94. The City of Kinston has acted arbitrarily with regards to, but not limited to: the decision to condemn each plaintiff's property, the decision to place on the list for demolition each plaintiff's property, the decision to order the demolition of each plaintiff's property, the decision to not remove plaintiff's property from the list for demolition, the decision to not rescind the order of demolition, and the decision to schedule plaintiff's property for imminent demolition.
>
> . . . .
>
> 97. Each plaintiff has been injured by the City of Kinston's action of condemning their property, and/or placing their property on the list for demolition, and/or ordering the demolition of their property, and/or placing their property on a schedule for imminent demolition, because of their race and/or because their property is located in a

- 13 -

predominately African American community.

The administrative process articulated by Chapter 160A provides Plaintiffs "the opportunity to enter the courthouse doors and present [their] claim[s]" and "the possibility of relief under the circumstances." *Craig*, 363 N.C. at 339-40, 678 S.E.2d at 355. A party may appeal a condemnation decision to the city council. N.C. Gen. Stat. § 160A-430. If that appeal is unsuccessful, the party may challenge the council's decision by petitioning the superior court for writ of certiorari. *Id.* § 160A-393(f). On certiorari review, the superior court examines whether the challenged order is "[i]n violation of constitutional provisions," "[a]rbitrary or capricious," or "[a]ffected by other error of law." *Id.* § 160A-393(k)(1). If the court concludes that the city council's decision was "based upon an error of law," it may "remand the case with an order that directs the decision-making board to take whatever action should have been taken had the error not been committed or to take such other action as is necessary to correct the error." *Id.* § 160A-393(l)(3). The court may also "issue an injunctive order requiring any other party to th[e] proceeding to take certain action or refrain from taking action that is consistent with the court's decision on the merits of the appeal." *Id.* § 160A-393(m).

Here, neither plaintiff appealed the orders to abate issued for 607 East Gordon Street or 610 North Independence Street to the city council. Askew appealed the order to abate issued for 110 North Trianon Street to the city council. That appeal was unsuccessful, and there is no record evidence that he petitioned the superior

court for writ of certiorari. Had Plaintiffs petitioned the superior court for writ of certiorari and presented sufficient evidence to demonstrate that Defendant's actions were arbitrary, the superior court could have enjoined Defendant from demolishing Plaintiffs' properties and remanded the case to the city council with instructions to remove Plaintiffs' properties from the list for demolition. *See id.* § 160A-393(l)(3), (m). Thus, the administrative process provides Plaintiffs the possibility of relief under their circumstances and is therefore adequate. *See Craig*, 363 N.C. at 340, 678 S.E.2d at 355.

Because the administrative process provides an adequate remedy for Plaintiffs' substantive due process claim, Plaintiffs cannot establish an essential element of their corresponding *Corum* claim. *See Deminski*, 377 N.C. at 413, 858 S.E.2d at 794. Accordingly, the trial court properly granted summary judgment to Defendant on Plaintiffs' substantive due process claim.

### 2. *Equal protection*

Plaintiffs assert that Defendant selected their properties for demolition based on race and therefore violated their right to equal protection of the laws.

The Equal Protection Clause "guarantees equal treatment of those who are similarly situated." *Grace Baptist Church v. City of Oxford*, 320 N.C. 439, 447, 358 S.E.2d 372, 377 (1987) (quotation marks and citation omitted). "When the right invoked is that to equal treatment, the appropriate remedy is a mandate of equal treatment." *Askew*, No. 55A23, slip op. at 15-16 (quotation marks, emphasis, and

citations omitted).

The administrative process articulated by Chapter 160A provides Plaintiffs "the opportunity to enter the courthouse doors and present [their] claim[s]" and "the possibility of relief under the circumstances." *Craig*, 363 N.C. at 339-40, 678 S.E.2d at 355. A party may appeal a condemnation decision to the city council. N.C. Gen. Stat. § 160A-430. If that appeal is unsuccessful, the party may challenge the council's decision by petitioning the superior court for writ of certiorari. *Id.* § 160A-393(f). On certiorari review, the superior court examines whether the challenged order is "[i]n violation of constitutional provisions," "[a]rbitrary or capricious," or "[a]ffected by other error of law." *Id.* § 160A-393(k)(1). If the court concludes that the city council's decision was "based upon an error of law," it may "remand the case with an order that directs the decision-making board to take whatever action should have been taken had the error not been committed or to take such other action as is necessary to correct the error." *Id.* § 160A-393(l)(3).

Here, neither plaintiff appealed the orders to abate issued for 607 East Gordon Street or 610 North Independence Street to the city council. Askew appealed the order to abate issued for 110 North Trianon Street to the city council. That appeal was unsuccessful, and there is no record evidence that he petitioned the superior court for writ of certiorari. Had Plaintiffs petitioned the superior court for writ of certiorari and presented sufficient evidence to demonstrate that Defendant's decisions were impermissibly discriminatory, the superior court could have remanded

the case with an order to direct the council to implement a nondiscriminatory process for selecting properties for condemnation. *See id.* Thus, the administrative process provides Plaintiffs the possibility of relief under their circumstances and is therefore adequate. *See Craig*, 363 N.C. at 340, 678 S.E.2d at 355.

Because the administrative process provides an adequate remedy for Plaintiffs' equal protection claim, Plaintiffs cannot establish an essential element of their corresponding *Corum* claim. *See Deminski*, 377 N.C. at 413, 858 S.E.2d at 794. Accordingly, the trial court properly granted Defendant summary judgment on Plaintiffs' equal protection claim.

## V.    Conclusion

Because an adequate state law remedy exists for each of Plaintiffs' distinct *Corum* claims, the trial court properly granted summary judgment to Defendant.

AFFIRMED.

Judges ARROWOOD and STADING concur.